(No. 10767.—Rule made absolute.)

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* HARRY J. MEYEROVITZ, Respondent.

*Opinion filed April 19, 1917—Rehearing denied June 6, 1917.*

1. DISBARMENT—*object of a disbarment proceeding.* The disbarment of an attorney is not punishment for crime nor for the purpose of enforcing remedies between parties nor merely to bring the attorney before the court for a reprimand, but the object of the proceeding is to remove a person shown to be unfit for the discharge of the duties of the office of attorney and to protect the courts and the public.

2. SAME—*attorney may be disbarred for acts not occurring in the discharge of the duties of his profession.* An attorney's unfitness to continue in the profession may be shown by acts not occurring in the discharge of the duties of his profession, and whenever he commits an act which shows such want of professional or personal honesty as renders him unworthy of public confidence it affords sufficient ground for his disbarment. (*People* v. *Allison,* 68 Ill. 151, and *People* v. *Appleton,* 105 id. 474, overruled.)

3. SAME—*if the misconduct is a crime the attorney need not be indicted before he can be disbarred.* It is the immoral or dishonest act of an attorney that justifies his disbarment, and it is not necessary that his misconduct subject him to indictment, or that, if the misconduct amount to a crime, he shall be prosecuted and convicted before disbarment; but where the act charged is a crime and there is a denial of the act and the testimony is conflicting, courts should exercise the power to disbar with great caution.

4. SAME—*good moral character required upon admission to the bar must continue throughout an attorney's professional career.* A good moral character is essential to admission to the bar, and if, after an attorney's admission, it is shown that he has forfeited or does not possess such good moral character it is the duty of the court to revoke his license.

5. SAME—*attorney may be disbarred for appropriating money entrusted to him in his private capacity.* Where an attorney has appropriated to his own use money entrusted to him, not as an attorney but in his private capacity, and admits doing so but pleads hard times and an intention to pay it back, he may be disbarred although he finally paid the money after complaint was made and before the hearing before the commissioner.

INFORMATION to disbar.

JOHN L. FOGLE, (ARTHUR DYRENFORTH, of counsel,) for relator.

LESTER L. BAUER, for respondent.

Mr. JUSTICE FARMER delivered the opinion of the court:

Relator, the Chicago Bar Association, filed an information for disbarment, consisting of six counts, against respondent, Harry J. Meyerovitz. Issue was joined and the cause referred to a commissioner, who heard the evidence and reported the same together with his finding that respondent had been careless and negligent in handling business entrusted to him by clients, that no one of the charges presented would warrant the court in disbarring respondent from the practice of law, and recommending that respondent be called before the court and censured for his past conduct and warned that similar conduct would not be tolerated in the future. Relator filed objections and exceptions to the findings and conclusions of the commissioner.

The first count charged respondent had been employed by one Tylikowski, who was convicted in the municipal court of Chicago of adultery and sentenced to six months in jail; that Tylikowski had first retained as his attorney Thomas J. Johnson and turned over to him a certified check for $300, $5 in currency and a watch and chain; that afterwards Tylikowski employed the respondent, and Johnson turned over to respondent the money and property he had received from Tylikowski upon an agreement with respondent to pay him (Johnson) $75 for and as his fees. The information charges respondent performed no services for Tylikowski of any consequence and did not inform Tylikowski or his relatives that the money and property had been turned over to him by Johnson; that said parties made demand upon Johnson for the return of the money and property, and upon his failing to do so filed a complaint with the committee on grievances of the Chicago Bar As-

sociation, upon the hearing of which it was disclosed that Johnson had turned the money and property over to respondent, whereupon demand was made upon respondent for the money and property but he refused to turn it over to Tylikowski, except that he finally did return $15 and promised to pay the balance at some later date, which .he has failed to do.

The second count charged respondent was employed by Leo Berger to bring a suit for divorce; that Berger paid him $125 and respondent agreed to secure a divorce for Berger within thirty days or return the money; that he filed the bill but did not bring the case to a hearing, and some four months afterwards Berger employed other counsel, who prosecuted the suit to a decree about December 10; that Berger demanded repeatedly the return of the money he had paid respondent but respondent failed and refused to return it.

The third count charged respondent was attorney for the Premium Automatic Company, a corporation; that said corporation desired to bring suit against one Zeigler, its former treasurer, for withholding money belonging to the corporation; that respondent was paid $50 to start the suit immediately; that he failed to do so, and after the lapse of some time Zeigler sued the corporation to recover the amount he had invested in its stock; that when this suit was brought the corporation officers had an interview with respondent, employed him to defend the suit brought by Zeigler, and authorized him to retain the $50 paid him for services in defending said suit; that respondent failed to file any appearance in the suit brought by Zeigler and allowed the suit against the corporation to go by default and 'a judgment to be entered for $211, whereupon the corporation demanded that respondent pay back the $50 fees paid him, which he neglected and refused to do.

The fourth count alleged that about June 9, 1915, the same corporation, the Premium Automatic Company, and

Arthur Golden, entered into a written agreement, by the terms of which Golden was to deposit in escrow $500, to be turned over to the corporation if within sixty days from the· date of the agreement it should manufacture its automatic machine, and Golden was to receive stock in the company for $500, but if the machine was not manufactured within the time mentioned the money was to be returned to Golden; that the $500 was deposited with respondent under an additional agreement, the material portions of which are: "The accompanying $500 are deposited with Harry J. Meyerovitz, to be delivered by *it* only upon the joint order of the undersigned or their respective legal representatives or assigns, * * * said escrow to be held in accordance with the accompanying contract." The information alleges the $500 was then and there deposited with respondent; that afterwards the agreement was modified by the parties and he was directed to pay over to the Premium Automatic Company $200 of said $500 and four shares of stock were issued to Golden therefor; that afterwards the agreement was canceled by both parties to it and demand made, both verbally and in writing, upon respondent for the return of the remaining $300; that respondent did not return it but claimed he had mingled it with the funds of the Premium Automatic Company at the bank and was unable to separate it from them, and at another time he stated he had spent the money and was unable to make restitution; that afterwards suit was brought against him and a judgment rendered for $300 December 27, 1915; that payment had been made of a part of the judgment on executions, but at the time of the filing of the information the sum of $200 remained unpaid.

The fifth count alleged that about October 25, 1915, Kurt Kienow was arrested in the city of Chicago upon a criminal charge and while confined in the county jail was solicited by respondent to employ him as his attorney; that the said Kienow was a German who had recently come to

America and was unfamiliar with American methods; that respondent informed him *money talked in America,* and promised to secure Kienow's release within three days if he would procure the money for that purpose; that Kie-·now received from his mother in Germany 810 marks (or, in round figures, $200,) and turned the same over to respondent; that respondent failed to obtain his release but defended him on his trial in court upon the criminal charge in a negligent manner and Kienow was convicted; that a motion for new trial was made and set for hearing December 17, 1915; that respondent failed to attend at the time set for hearing said motion and Kienow was about to be sentenced, but upon the intervention of the German consul and the Legal Aid Society of Chicago, who had investigated the good record of Kienow and presented it to the court, he was paroled; that afterward respondent was called into court by the judge who presided at the trial and severely reprimanded for his negligent management of the case; that in answer to inquiries by said judge respondent disclosed the amount of money he had received from Kienow and was ordered by the judge to return all except the sum of $75, which he might retain for his fee; that respondent stated he did not then have the money but if the matter was continued until the following Monday he would return the money; that the matter was continued, but when it came on for further hearing respondent appeared by counsel and claimed the court had no authority to fix or regulate his fees and refused to make restitution.

The sixth count is not referred to in the report of the commissioner nor in the briefs of counsel on either side and need not be further referred to.

As to all the counts except the fourth the evidence was conflicting as to respondent's actions and conduct with his clients and he offered excuses and explanations, so that the commissioner did not feel that the case against him was sufficiently clear to justify disbarment under those counts.

We shall therefore not enter into a discussion of the evidence heard under the first, second, third, fifth and sixth counts.

There was no material conflict in the testimony under the fourth count. It was not disputed that $500 was deposited with respondent to hold for sixty days, at which time, if the Premium Automatic Company had manufactured the automatic machine for which it was organized, the $500 was to be paid to the corporation and stock issued for that amount to Golden, who deposited the money. If the machine was not manufactured within that time the money was to be returned to Golden. Before the sixty days had expired the agreement was modified authorizing the payment of $200 to the corporation, for which stock was issued to Golden. The machine was never manufactured and the corporation is not doing any business. Golden demanded the $300 from respondent but it was not paid to him. Respondent admits he has used it. His excuse for doing so was that he had married, and, without saying so, hints that he became involved in difficulties on that account, which caused him to use the money, intending to return it as soon as he could. He claimed, and doubtless truthfully, that he did not intend to beat Golden out of it. It is the contention of the respondent's counsel that he was a mere stakeholder or trustee of the money deposited with him under the escrow agreement; that he was not acting as attorney in receiving and holding the money; that he was never paid anything for that service, and that under the decisions of this court in *People* v. *Allison,* 68 Ill. 151, and *People* v. *Appleton,* 105 id. 474, his conduct in that matter affords no ground for disbarment.

The facts disclosed by the proof are that Golden employed an attorney to collect the $300. The attorney called on respondent a number of times to collect the money. Respondent made no denial of his duty and liability to pay it, but on the first call made by Golden's attorney he claimed

his stenographer was absent and that he was unable to find the contract. Finally the attorney procured a copy of the contract and called on respondent with it and exhibited it to him. He promised to pay the money but admitted he had used it and asked for time. Suit was brought against him in trover, a judgment recovered and an execution against the body issued. Respondent requested the attorney who brought the suit not to proceed with the execution and promised to pay the money out of funds he was expecting soon to receive. The execution was not served and the respondent afterwards paid $100. Thereafter complaint was made to the grievance committee of the Chicago Bar Association, which resulted in the filing of this information. At the time that complaint was made the $200 had not been paid but it was paid before the hearing before the commissioner.

Just what time the Premium Automatic Company first retained or talked with respondent about employing him as counsel is not clear from the record. Respondent himself testified he represented the Premium Automatic Company in April or May, 1915. It paid him $50 in September, 1915, to bring suit against Zeigler, which he failed to do, and when Zeigler sued the corporation a little later the corporation employed respondent to defend that suit, and it was agreed the $50 paid him to bring the suit he never brought should be retained by him on his fee for defending the Zeigler suit, which he failed to defend. Respondent testified he received no pay for becoming custodian of the $500 and that he was not employed as an attorney for that purpose. So far as this record shows, no relations existed between the officers of the Premium Automatic Company and respondent, or Golden and respondent, other than those that brought them together because of respondent's office as attorney at law, that would suggest any reason for selecting respondent as custodian of the money under the agreement. Whether he was paid for that service or not,

we think the inference warranted that he was selected as the depositary because of his having been employed by the corporation as its attorney. Whether this is true or not, however, in our opinion can make no difference in the consideration of this case.

In *People* v. *Appleton, supra,* (a disbarment proceeding,) defendant was an attorney. Hughes, an acquaintance and friend, who was also an attorney, for certain reasons caused a conveyance of real estate of which he was the beneficial owner to be made to defendant to hold the title in trust for the owner. Defendant executed a declaration of trust to Hughes which was not recorded, and without the knowledge of Hughes he mortgaged the property and used the money obtained thereby. Finally he sold it and appropriated the money received from the sale. There appears never to have existed any relation of attorney and client between Hughes and defendant. Hughes asked defendant if he would accept the title in trust for him, which defendant agreed to do, apparently as a favor to Hughes. The court held that in accepting the trust defendant acted in his capacity as a private individual and not as an attorney at law, and, following certain cases cited, held that where the misconduct alleged was not in the defendant's employment as an attorney, relief could be obtained in a proper court at the suit of the party injured but that such misconduct afforded no warrant for a disbarment proceeding. The court said, although that was the general rule it was not without exceptions; that an attorney's conduct in his private capacity might be of so gross a character that a court would be warranted in exercising the power of disbarment.

The rule announced in *People* v. *Allison, supra,* was followed in *People* v. *Appleton, supra,* but Mr. Justice Mulkey delivered a vigorous dissenting opinion, which was concurred in by Mr. Justice Walker. It cannot be denied that there are a considerable number of decisions of courts of

high standing supporting that rule, but there is, we think, an equal or greater number of decisions of courts of equal respectability holding to the contrary. In *Ex parte Wall,* 107 U. S. 265, will be found cited a number of cases holding that where the misconduct alleged against an attorney amounts to a charge of the commission of a crime there must be an indictment and conviction for the crime before disbarment will be authorized. The English rule is, that where the misconduct charged was not in the professional capacity of the attorney, if indictable and the charge is fairly denied, the courts will not disbar for such acts until he has been indicted and convicted. In the same opinion the Supreme Court of the United States refers to a large number of decisions of American courts which do not follow the English rule. This court has, we think, indicated a departure from the rule announced in the *Allison* and *Appleton cases.* In *People* v. *Smith,* 200 Ill. 442, the respondent was charged with advertising in a newspaper that he was a loyal and wealthy attorney, and guaranteed "family freedom in a month; no advance costs; witnesses quietly volunteered." The court held the publication of such an advertisement by respondent was a criminal offense under the statute, but the rule was made absolute and respondent's name stricken from the roll of attorneys although he had not been indicted and convicted of a crime. The court quoted from authorities to the effect that any conduct on the part of an attorney showing unfitness for the confidence and trust attending the relation of attorney and client and the practice of law before the courts, or showing lack of personal honesty or good moral character, constituted good ground for disbarment; that "as a good character is an essential qualification for admission to practice, he may be removed whenever he ceases to possess such a character."

The disbarment of an attorney is not punishment for crime nor for the purpose of enforcing remedies between

parties but to remove a person shown to be unfit for the discharge of the duties of the office and to protect the courts and the public. His unfitness to continue in the profession may be shown by acts not occurring in the discharge of the duties of his profession. When he commits an act, whether in the discharge of his duties or not, which shows such want of professional or personal honesty as renders him unworthy of public confidence it affords sufficient ground for his disbarment. It is not necessary that his misconduct should subject him to indictment, or that, if the misconduct charged amounted to a crime, he should be prosecuted and convicted before disbarment. Certainly, where the act charged is a crime and there is a denial of the act and the testimony is conflicting, courts should exercise the power to disbar with great caution. But that is not the case here. The charge of converting the money deposited with respondent to his own use and his failure to restore it on demand is admitted and is only attempted to be excused on the ground that respondent needed it at the time he used it and intended to re-pay it. The use of the money by respondent was an immoral act and shows him to be unworthy of trust and confidence. While American courts are not all in harmony, it is believed the weight of authority, as well as the better reason, is that courts will disbar an attorney on account of criminal acts whether there has been a prosecution and conviction for such acts or not. It is not the conviction which justifies disbarment but the commission of the act. The record of the conviction is conclusive evidence of the guilt of the accused, but guilt may be proved without such record. A good moral character is essential to admission to the bar, and it must follow that if, after an attorney's admission, it is shown that he has forfeited or does not possess such good moral character, it is the duty of the court to revoke the authority it gave him by his admission to the bar.

We are of opinion the weight of authority holds that misconduct of an attorney outside his professional dealings may afford good ground for disbarment. (*People* v. *Essington,* 32 Col. 168; *Delano's case,* 58 N. H. 5; 42 Am. Rep. 555; *In re Wellcome,* 23 Mont. 213; *Baker* v. *Commonwealth,* 10 Bush, 592; *State.* v. *Finley,* 30 Fla. 302; 2 R. C. L. 1099; 6 Corpus Juris, 599, 600; 3 Am. & Eng. Ency. of Law, 302.) We are also in accord with the rule, supported by many authorities, that where the misconduct charged is outside one's conduct as an attorney and constitutes a crime affecting the personal honesty and integrity, for which the party charged might have been indicted, it is not indispensable that guilt must be established by a conviction before disbarment. See cases cited on page 80 of note to *In re Philbrook,* 45 Am. St. Rep.; 2 R. C. L. 1101; 6 Corpus Juris, 586; *Ex parte Wall, supra; Delano's case, supra;* 3 Am. & Eng. Ency. of Law, 302, 303; 4 Cyc. 910.

This court is not committed to the English rule, and it is not believed the power to disbar cannot be exercised in any case where an attorney is charged with the commission of a crime outside his capacity of a lawyer, affecting his honesty, until he has been first convicted. That the power of the court is not so limited in a case where the criminal act was committed by an attorney in his capacity as a lawyer is the inference to be drawn from *People* v. *Comstock,* 176 Ill. 192. In that case respondent was charged with a crime committed in his professional capacity, for which an indictment was pending against him. The court declined to entertain the information, not upon the ground it could not lawfully do so, but because, as stated in the opinion, the better practice was to wait until a trial was had under the indictment. As we have before remarked, it is the immoral and dishonest act of the attorney which justifies his disbarment. It would be strange if an attorney charged with misconduct outside his professional capacity,—say larceny, perjury or forgery,—should answer ad-

mitting his guilt but interpose the defense that he had never been convicted of the offense and thereby escape disbarment. The offense is the same and the immorality and moral turpitude the same even though the party escapes criminal prosecution. In our opinion the requirement that before an applicant can be admitted to the bar he must be shown to be of good moral· character does not end with his admission but continues throughout his professional life, and he must maintain a good moral character so long as he is a member of the profession. If he does not do so and after his admission it is made to appear that he is an unsafe and unfit person to be trusted as an attorney, courts have the power, and it is their duty, to strike his name from the roll of attorneys. It would be an anomalous thing if courts could refuse an applicant admission to the bar because he had been guilty of criminal conduct for which he had never been indicted and convicted but could not disbar on the same grounds. The legal profession affords unscrupulous attorneys exceptional opportunities to impose and prey upon those who entrust them with business, and it is essential that members of the profession, in their relation to the public and with clients, shall be strictly honest and worthy of trust and confidence. Respondent does not contest the recommendation of the commissioner that he should be brought before the bar of this court, reprimanded and cautioned. That might be a form of punishment for him. But punishment is not the object of this proceeding. The object of this inquiry is to determine whether respondent is a proper person to be permitted to continue in the practice of an honorable profession. The undisputed testimony, in our opinion, shows he is not.

The rule is made absolute and the respondent's name stricken from the roll of attorneys.

*Rule made absolute.*