(No. 22416.—

IN RE MAX BORCHARDT, Attorney, Respondent.

*Opinion filed June 19, 1934—Rehearing denied October 9, 1934.*

STONE, DEYOUNG and SHAW, JJ., dissenting.

JOHN L. FOGLE, (TAPPAN GREGORY, of counsel,) *amicus curiæ.*

GEORGE L. QUILICI, for respondent.

Mr. JUSTICE ORR delivered the opinion of the court:

The committee on grievances of the Chicago Bar Association, sitting as commissioners·of this court, pursuant to an order entered on April 21, 1933, (now a part of rule 59,) filed an original and supplemental report of conclusions of fact and law concerning a complaint charging unprofessional conduct of respondent, Max Borchardt, and recommending his disbarment. Respondent filed exceptions to the report, and the cause is submitted by stipulation upon the proof and record made before the commissioners.

The facts are undisputed. Respondent was licensed to practice law in Illinois in 1907 and since that time has been a member of the Chicago bar. In 1931 he became executor of wills in two estates pending in the probate court of Cook county. In one he was appointed without bond and in the other he furnished a surety company bond. In 1933, after both estates should have been fully administered, he was called upon ·to account. This he was unable to do, because, as he admitted, the funds of the two estates had been commingled with his own and spent for his benefit. After some negotiation an agreement was entered into between respondent and the parties interested in the two estates whereby the appropriations of respondent were fixed at approximately $4000 in one estate and $8500 in the other. Respondent agreed to pay the amounts due in installments over twenty months. He turned over all of his remaining personal assets, consisting of $5000 first mortgage, second mortgages with face values of $15,000, a judgment of unknown value for $3000 and several life insurance policies. In addition to this, five persons guar-

anteed the performance of the agreement, each to the extent of one-fifth thereof. The legatees, devisees and surety have made no complaint and all seem to be satisfied with the agreement of restitution, under which respondent has paid slightly more than $1300. The securities are of very doubtful value, but respondent believes that approximately $3000 may be collected on their account. The record shows that respondent did not resort to subterfuge or falsehood to excuse his wrongdoing but candidly admitted that he had used the estate funds from time to time, over a period of a year or more, in payment of his personal, household and family expenses. He asserts that the estate funds were used by him only in the nature of borrowed money, without any larcenous intent; that all parties interested are satisfied with his agreement to make restitution, and that restitution cannot be made in full unless he is allowed to continue to practice law, as his age, physical condition and lack of means or training preclude him from following any other gainful pursuit.

All of the foregoing matters were duly submitted and fully considered by the commissioners of this court, and notwithstanding the ameliorating circumstances their unanimous conclusion was that respondent should be disbarred from further practice of law in this State. We concede that he should not be allowed to practice law while he is in default, due to his own wrongdoing, but complete disbarment, under the circumstances of this case, would seem somewhat harsh and unnecessary. The record shows that he has enjoyed a long and honorable career at the bar and that he and his friends have pledged themselves to make complete restitution to those who would otherwise suffer damage by his wrongdoing. Each case of this character must be considered on its own merits and no hard and fast rule can be laid down to govern the determination of all cases. In this case the proof shows an absence of any chicanery or evasive tactics on the part of respondent. On

the contrary, he frankly admitted the improper use of the funds, and not only turned over all of his own resources but secured the pledge of five friends in an unusual effort to make complete restitution. While restitution, in itself, will not excuse the wrong, it nevertheless is a recognition of the rights of others. The agreement of respondent and his friends to make full restitution must be taken as recognition of the right of those who have suffered property loss, as well as the public generally, to be fully protected against unprofessional and dishonest conduct of attorneys. This court does not strike the name of an attorney from the roll as a matter of punishment, but does so primarily to protect the public from further misdeeds of like character and to insure the high standing and reputation of the bar. (*People* v. *Meyerovitz*, 278 Ill. 356.) The wrongful conversion by an attorney at law of funds placed in his hands for a specific purpose is a flagrant violation of duty and requires discipline. (*People* v. *Hansen*, 352 Ill. 144; *People* v. *Ladouceur*, 347 id. 454; *In re Zahn*, 356 id. 283.) Financial misfortune and adverse circumstances afford no justification for such conduct. (*People* v. *Grusd*, 318 Ill. 44.) The fact that restitution is made will not absolve an attorney nor preclude inquiry into the professional propriety of his acts prior to and in connection with the settlement made. *People* v. *Hansen, supra.*

Respondent has been a member of the bar of this State for twenty-seven years. This one instance of unprofessional conduct is the only wrongdoing charged and proved against him during that period of time. Even on assumptions most favorable to him that he was one of the many victims of financial depression, his dire financial necessities do not exculpate him for the wrongful conversion and use of trust funds in his possession. Under the particular circumstances disclosed in this case, however, the ends of justice do not require his disbarment but will be satisfied by a suspension.

Respondent will therefore be suspended from practice as attorney and counselor at law within this State for a period of two years and until such further time as may be required to make complete restitution of the money to the persons interested in the two estates.

*Respondent suspended.*

Mr. JUSTICE DeYOUNG, dissenting.

It appears that the respondent was the executor of two wills, commingled moneys of the estates with his personal funds, and converted between $12,000 and $13,000 to his own use. The commissioners made this finding: "The assets of the two estates were collected by the respondent from time to time during a period of a year or more and were deposited in his personal account in a bank and were checked out by him from month to month in the payment of his personal and household expenses, in paying his rent and in support of his family." The repeated wrongful acts occurred over a considerable period of time and the conversions were deliberate and fraudulent. The respondent's assertions that the funds of the estates were used by him only in the nature of borrowed money, without any larcenous intent, and that all the parties interested are satisfied with his agreement to make restitution cannot avail him. He had no authority to lend the money of the estates to any person, and certainly not to himself; and his agreement to make restitution, although acceptable to the interested parties, does not absolve this court of its responsibility to require of the members of the bar of this State absolute fidelity and integrity in the discharge of their professional duties and obligations.

The respondent's acts appear to me to warrant his disbarment.

JUSTICES STONE and SHAW concur in the foregoing dissenting opinion.