(No. 31424.—

IN RE JOSEPH P. POWER, Attorney, Respondent.

*Opinion filed November 27, 1950.*

CHARLES LEVITON, of Chicago, *amicus curiae.*

MARION J. HANNIGAN, of Chicago, for respondent.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The Committee on Grievances and the Board of Managers of the Chicago Bar Association, acting as commissioners of this court, after hearings on four separate complaints against respondent, Joseph P. Power, recommended his disbarment.

The facts concerning the first complaint are that in July, 1939, one Mary Meter delivered to respondent one five-hundred dollar and two one-hundred dollar real-estate bonds for the purpose of having respondent investigate their value. In September, 1939, respondent reported that there was $135 interest accrued on the bond and delivered that sum to Mrs. Meter. Thereafter, respondent applied the $500 bond to the purchase of certain realty and, upon inquiry from the complainant, failed to restore the bond until August, 1940, when this complaint was filed with the grievance committee by Mrs. Meter's brother in her behalf. Thereafter, respondent returned the two one-hundred dollar bonds and paid complainant $450 for the other bond. The evidence adduced on this complaint shows that the market value of the bond was $400 and that respondent had settled in full and had charged no fee. The commissioners found that respondent was guilty of unethical conduct and subject to severe criticism, but no action was taken further than that.

The second complaint, filed on behalf of one Dennis Sullivan, arose out of a retailers' occupational tax assessment for back taxes levied against Sullivan in the amount of $1165. One Gibbons, on behalf of Sullivan, consulted respondent in the matter and respondent undertook to accomplish liquidation of the claim in April, 1942. Respondent told Gibbons to bring him $600 and he would arrange a settlement. The evidence on this complaint shows that respondent received the $600, but made little or no effort to adjust the matter and made no report or return of the money. Gibbons, on behalf of Sullivan, filed this complaint with the grievance committee on January 12, 1943. Sullivan finally paid the entire amount of the assessment to the Department of Finance. After this complaint was filed, respondent returned the sum of $400 to Sullivan in one installment and later returned $100 more but has not made restitution of the remaining $100. There is some evidence

that Gibbons authorized respondent to keep that balance as a fee for what work he did on the matter.

The commissioners found respondent guilty of unethical conduct and subject to severe criticism, but recommended no disciplinary action.

On May 8, 1944, the committee on inquiry filed a complaint against respondent based on a complaint made by O. R. Smith and Martha Smith. The situation out of which this complaint arose was that respondent represented William and Martha Smith as defendants in a mortgage foreclosure. In these proceedings William and Martha Smith were ordered to pay O. R. Smith and Douglas Lumber Company the sum of $85 per month as rent on the premises involved, beginning September 1, 1942. The rentals were delivered to respondent in the amounts ordered until August 30, 1943, when a total of $840 had been delivered to him. Of these payments, respondent did not remit $350, nor did he make restitution to his clients until after long and involved litigation and complaint to the bar association, after which the money withheld was paid. The complaint in this instance was jointly made by respondent's clients and the creditor of his clients. The commissioners censured the respondent but ordered the complaint filed without further action.

On August 11, 1947, the committee on inquiry filed ·its complaint against respondent, based on complaints of one Tom Kringas and the Unity Baptist Church. The facts on these matters disclosed that in the matter of the Tom Kringas complaint, respondent received from John Kringas, complainant's father, the sum of $300, to perfect an appeal from a judgment rendered against Tom Kringas. The appeal was never perfected and the respondent's defense on this complaint was that he returned the $300 to Kringas in cash and that all records concerning the transaction were lost. One Belroy, an attorney, supported this defense with testimony that Kringas told him respondent had returned

the money. The commissioners found this charge had not been proved by clear and convincing evidence so as to justify disciplinary action.

In the Unity Baptist Church complaint it appears that the church and one McCall were engaged in a controversy over a claim by McCall in the amount of $1700 for back salary as pastor. Respondent, representing the church, advised the church that he could settle the claim for $500, which sum the church advanced to him in April and June, 1946. It further appeared that respondent received other money from the church with which to pay costs and $102 to apply on his fee. No settlement of the McCall matter was made and a decree was finally entered against the church in the amount of $1938.19, which the church paid in full. The church made repeated requests for the $500 advanced to respondent, without result, after which this complaint was filed. Thereafter, respondent made restitution in the amount of $350, retaining the balance as his fee with consent of the church.

The commissioners, after repeated hearings on this complaint and supplemental hearings on the other complaints found the respondent guilty of sharp practice and repeated conversion of client's funds, with only partial restitution of the funds so converted. They further found respondent's conduct was tainted with extreme moral turpitude and recommended his disbarment.

The record reveals without question that in at least four instances over a period of seven years respondent received funds from the clients involved in these complaints for specific purposes. It is also clearly shown that in those instances respondent failed to accomplish the purposes for which he received the funds and in each case failed to restore the funds to his clients until after complaint was made to the bar association regarding his conduct. It also appears that thereafter, in each instance, he made restitution satisfactory to the client.

The respondent contends the evidence offered to support the charges of the complaints was not of that clear and convincing quality necessary to support a recommendation of disbarment or suspension. He cites the rule that such charges of misconduct must be proved by clear and convincing evidence. *In re Obartuch,* 386 Ill. 323; *In re Mitgang,* 385 Ill. 311, and other cases.

While this rule concerning the quality of the evidence required to support disciplinary proceedings has been repeatedly stated by this court, we hardly see how it can reasonably be said that it was violated in this proceeding. There is no doubt from this record that respondent received the funds complained about and that he failed or neglected to use them for the purposes intended. It is not disputed that restitution was made only after disciplinary action had been initiated in each case.

Respondent also contends that not only the acts of misconduct charged, but the motives behind them must be proved to have been wrongful by clear and convincing evidence. (*In re Obartuch,* 386 Ill. 323; *In re Smith,* 365 Ill. 11.) The record here discloses that after having received the funds of the complaining clients, in each case respondent made little or no effort to accomplish the object for which the money was entrusted. That he was repeatedly requested to act in each case is also clearly shown. The fact that, after the complaints involved here were filed, he made restitution is clearly indicative that he did not misunderstand his duty in regard to the funds entrusted to him. While there is no evidence as to his actual intention with regard to these funds, the only reasonable interpretation to be placed upon his conduct in that regard is that he intended to retain the funds until and unless he was forced to restore them. Such reluctance to deal fairly and openly with clients reflects discredit upon the attorney engaging in such conduct and lowers the respect of the public for the bar generally. There is no direct evidence of

embezzlement of clients' funds here and there is some evidence of willingness, however reluctant, on the part of respondent to restore the funds of his clients.

In the Sullivan complaint it is revealed that respondent accomplished exactly nothing for his client Sullivan, and that the tax assessment against Sullivan was finally paid through direct negotiation with the Department of Finance. In the Unity Baptist Church complaint the evidence shows that a settlement could have been effected between the church and McCall at a figure far less than the church finally paid, had respondent pursued his duty with diligence.

Respondent seeks to explain his failure to restore the money of the Unity Baptist Church on the ground that he was in dispute with the trustees of that church over the amount of the fee.

An analysis of the record presented here discloses that, in the matters on which the four complaints were based, respondent has made satisfactory restitution of funds entrusted to him. It appears that in the Meter complaint and the Sullivan complaint the complainants were reluctant to testify against respondent, and in all but the United Baptists church complaint the commissioners did not find the misconduct of respondent sufficiently grave to warrant disciplinary action. In the United Baptist Church complaint the action of the commissioners in recommending disbarment was expressly based on the cumulative effect of all the complaints. Since the misconduct charged in each instance is similar in character as in the other cases, we are unable to reconcile the recommendation of the extreme penalty of disbarment after failure to recommend any action on the previous essentially similar charges.

The disbarment of an attorney is the destruction of his professional life, his character and his livelihood and therefore should be imposed in moderation. (*In re Donaghy*, 402 Ill. 120.) The conduct of respondent, as we

find from the record here, tends to lower the respect to which the profession is entitled from the public, but it does not appear that he has thereby gained any specific advantage therefrom for himself and he has made restitution of their funds. While restitution may be an element to consider in determining the seriousness of the misconduct charged, such restitution of funds does not preclude inquiry into the moral and professional quality of respondent's acts in connection therewith. (*People ex rel. Wayman* v. *Chamberlain*, 242 Ill. 260.) Wrongful conversion by an attorney of a client's funds placed in his hands for a specific purpose requires discipline. (*In re Borchardt*, 357 Ill. 458.) This court does not strike the name of an attorney from the roll as a matter of punishment but does so primarily to protect the public from further misdeeds of like character and to insure the high standing and reputation of the bar. (*In re Borchardt*, 357 Ill. 458; *People ex rel. Chicago Bar Ass'n* v. *Meyerovitz*, 278 Ill. 356.) Misapplication and failure to account for funds may be ground for disbarment, but where a corrupt motive and moral turpiture are not clearly shown, suspension is a proper punishment. *In re Hallmann*, 384 Ill. 325.

In the instant case the respondent's acts of misconduct clearly appear, but it is not clearly proved that those acts proceeded from corrupt motives. We are of the opinion that at this time a sufficient punishment would be suspension. Respondent will therefore be suspended from practice as attorney and counselor at law within this State for a period of one year. *Respondent suspended.*