(No. 39777.—

*In re* HAROLD C. NESSELSON, Attorney, Respondent.

*Opinion filed Sept. 23, 1966.—Rehearing denied Oct. 27, 1966.*

J. R. CHRISTIANSON, of Chicago, *amicus curiae.*

HARRY J. BUSCH, JACOB SHAMBERG, AND ANGELO RUG-
GIERO, all of Chicago, for respondent.

Mr. JUSTICE SOLFISBURG delivered the opinion of the
court:

The Grievance Committee of the Chicago Bar Association, sitting as commissioners of this court under Rule 59, filed a report recommending that the respondent, Harold C. Nesselson, be suspended from the practice of law for a period of three years. On January 20, 1966, the Board of Managers of the Chicago Bar Association, sitting as commissioners of this court, held a hearing for the consideration of the report and the objections thereto and, as commissioners, approved the report.

The respondent was charged in a complaint with violating Canons 27, 28 and 34 of the Canons of Ethics of the Illinois State Bar and the Chicago Bar Associations in that he solicited personal injury cases and therefore committed acts which tend to bring the legal profession into disrepute. The respondent admitted that he sought to obtain representation of plaintiffs in personal injury cases through direct mail solicitation of persons whose names had been furnished him by policemen, cab drivers, and others. If he was retained by a client procured in this manner, he paid $75 to the informant if the injured party was an adult and $35 if the injured party was a minor.

The respondent has filed exceptions in this court stating that he excepts to the finding of the committee that he was "not candid or forthright" in testifying before the commissioners; the findings that his conduct violated the canons of professional ethics and tended to bring the bench and the bar into disrepute; and the statement of the commissioners that they found nothing in the evidence of respondent's character witnesses which would require modification of their previous finding that respondent was not candid or forthright in his testimony. He further states that the punishment is drastic and unwarranted, and that the commissioners ignored the fact that respondent testified with complete candor.

Respondent is 43 years old and resides in Lincolnwood, Illinois, with his wife and three children. He graduated

from the University of Omaha and, after being discharged from military service for medical reasons during World War II, he attended Loyola University in Chicago. Later, in 1945, he began night school at DePaul University Law School. He worked in various businesses until he was admitted to the practice of law in October, 1955. He took the bar examination in July of 1951 and failed; took it again in March of 1952 and passed. His admission to the bar was delayed until 1955 while the Committee on Character and Fitness was investigating his character. It was thus approximately three and one-half years between the time of his passing of the bar and the time of his admission to practice. By the time he had practiced law three years, he had four full-time lawyers, four full-time secretaries, and one law clerk working for him. In 1962 his gross income from his practice was approximately $96,000 and after paying his employees and expenses, he reported a personal income of between $30,000 and $35,000. In 1962 he developed several form letters to solicit personal injury work. He stated that he could not identify the persons who furnished him with leads because all informants, particularly the police officers, wished to conceal their identities. Each letter contained language stating that the letter was written as a result of or in acknowledgment or in response to a previous contact with the respondent's office by the addressee or a friend of the addressee. Respondent admitted that in no instance had the addressee contacted him or his office prior to the sending of the letter. He sent out an average of three to four letters per week. The payments previously mentioned to informants were always in cash and were treated by respondent as his personal expenses. Eight of these letters signed by respondent were introduced in evidence.

According to respondent's testimony he solicited personal injury clients by these letters as he was under financial pressure because he had previously incurred large expenses for the care of a child born with club feet, for his mother's

hospitalization, helping his brother attend school, and meeting the expenses of his father's illness and death in 1962. A number of character witnesses testified to respondent's good character and reputation.

The commissioners found that respondent was not candid or forthright in testifying as to the identity of informants, the identity of persons to whom he made cash payments for leads, and the facts and circumstances involving the delay of three and one-half years in securing admission to the bar. Respondent argues that he made full disclosure of the facts involved, unequivocal admissions of the truth of certain charges, and that he denied only the untrue charges.

A careful reading of the record reveals that this contention is without merit. The respondent was candid on many matters where there could be no question about the ability of the committee to establish the facts. However, some of his testimony could be termed evasive. During the course of respondent's testimony it became apparent that he was avoiding testimony as to his employment by Joseph Hagn and Sons for a period in excess of two years. His testimony further warrants the conclusion that he was unwilling to testify regarding the date on which he passed the bar examination and the date on which he was admitted to practice, as he gave several different dates for each event. Further testimony elicited from respondent by the Commissioners indicates that his admission to the bar was delayed because of an investigation of a complaint by Joseph Hagn.

We think the record indicates the respondent exhibited a lack of candor as to his work record and his admission to the bar. This finding is not, as respondent insists, a collateral attack on the granting of respondent's license, but merely a report to this court concerning the conduct of respondent before the commissioners. We feel that the com-

missioners were justified in exploring the area because of the equivocation and omissions in respondent's prior testimony. Respondent's further testimony that he did not know the names of any of his informants or people he paid for leads gives rise to serious doubts as to his candor. The Commissioners are not required to be naive. (*In re Browning,* 23 Ill.2d 483.) Under these circumstances, and as the recommendation of the commissioners is merely advisory to this court, it was their duty to report any lack of candor to this court once that fact had been determined.

It is our opinion that respondent's exception to the finding that his conduct violated Canons 27 and 28 of the Illinois State and Chicago Bar Associations and constituted conduct which tended to bring the bench and bar of the State of Illinois in disrepute is without merit. Canon 27, among other things, bars solicitation of professional employment by circulars or advertisements or by personal communications or interviews not warranted by personal relations; and Canon 28 provides as follows: " It is disreputable * * * to breed litigation by seeking out those with claims for personal injuries * * * in order to secure them as clients, or to employ agents or runners for like purposes, or to pay or reward, directly or indirectly, those who bring or influence the bringing of such cases to his office or to remunerate policemen, court or prison officials, physicians, hospital attaches or others who may succeed, under the guise of giving disinterested friendly advice, in influencing the criminal, the sick and the injured, the ignorant or others, to seek his professional services."

The respondent testified that he knowingly engaged in prohibited conduct and was conscious that his conduct, if known, would require discipline. It is also apparent that he sought to conceal this improper conduct. Actually, when he engaged in these mail-order solicitations, he was experienced in the business world and had engaged in the advertising

part of business, although he had practiced law but briefly. We find that the record permits no other conclusion than that respondent knowingly violated Canons 27 and 28.

Respondent's misconduct in paying informants for leads is fully covered by Canon 28, but we do not think that this activity was intended to be covered by Canon 34 which provides that no division of fees for legal services is proper except with another lawyer based upon a division of services and responsibility. We can find no evidence of the type of fee splitting contemplated by Canon 34 and hold that respondent's exception to this finding is well taken.

Respondent also objects to the finding by the commissioners that they found nothing in the evidence of his character witnesses which would require modification of their previous findings concerning the nature of the action in which respondent engaged and the finding that he was not candid and forthright in testifying before the commission. We have previously discussed whether the respondent was candid and forthright and there is nothing in the evidence of the character witnesses which requires modification of any finding of the commissioners. His good character as testified to by the witnesses could not possibly alter his own words in his testimony before the commissioners.

Respondent's final contention is that the punishment is drastic, severe and unwarranted, and that the evidence does not justify the recommendation of the commissioners. He further contends that the recommendation ignores the fact that respondent cooperated with the committee and that the suspension of practice of law for three years would destroy his professional life and bring humiliation to his entire family. Respondent points out that in *In re Cohn*, 10 Ill.2d 186, it was stated that while solicitation of law business is reprehensible and improper, it is not an offense which imports venality, fraudulent practice or moral turpitude. In the case of *In re Krasner*, 32 Ill.2d 121, 129, we said: "And while neither the solicitation of law business nor

the division of fees here involved imports venality, fraudulent practices or moral turpitude, they are nevertheless practices which have long been condemned as a blight upon the legal profession." That case also involved solicitation and the court suspended the respondent. Here the proof, based essentially on the testimony of the respondent himself, supports the charges and findings relating to Canons 27 and 28 and he must be disciplined.

Concerning the severity of the discipline recommended here respondent has compared the discipline meted out by the court in other disciplinary actions, which have run the gamut from discharge to disbarment, and has asked us to contrast the severity of the recommendation here and the results in other cases which he claims are very similar. No cases, however, are to be treated as approving or condoning the violation of Canons 27 and 28, and the discipline in each case must turn upon the particular factual situation presented. The doctrine of *stare decisis* cannot really be applied to the particular discipline meted out in any particular case, as the conduct of each respondent must be judged individually. Where, as here, the respondent has admitted knowingly violating the canons concerned, his candor, experience, family and financial problems can only be in mitigation of the admitted offense. In each case where such circumstances were argued in mitigation, they were in fact a plea for mercy. Needless to say this court has over the years considered many excuses as to why a respondent should be discharged or censured rather than suspended from the practice of law or disbarred. In 1962, when respondent began his direct mail campaign to solicit business, his income was in excess of $30,000 and the claim of financial pressure is not appealing under these circumstances. As to his claim that his professional life will be virtually destroyed and that he and his family have already been humiliated by the mere pendency of these proceedings, these circumstances are present in almost every disciplinary proceeding. We must

also remember that discipline is not imposed primarily for the purpose of punishment, but that the primary purpose of a suspension or disbarment is to protect the public and maintain the reputation and dignity of the legal profession.

We have carefully considered all the testimony and the recommendation of the commissioners, and it is our opinion that the recommendation of the commissioners is proper and respondent is suspended from the practice of law for three years.

*Respondent suspended.*