(No. 55382.—

*In re* PETER VICTOR PAPPAS, Attorney, Respondent.

*Opinion filed September 17, 1982.—Rehearing denied November 24, 1982.*

MORAN, J., took no part.

Mary M. Conrad, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., for respondent, and Peter Victor Pappas, *pro se*.

JUSTICE CLARK delivered the opinion of the court:

On October 29, 1976, the respondent, Peter V. Pappas, was convicted in the United States District Court for the Northern District of Illinois, Eastern Division, of conspiracy to commit mail fraud, mail fraud, and causing an individual to travel in interstate commerce with the intent to promote an unlawful activity (bribery). On March 31, 1977, he was suspended from the practice of law pursuant to Supreme Court Rule 761 (65 Ill. 2d R. 761). Respondent's conviction was affirmed on appeal. Petition for *certiorari* was denied by the United States Supreme Court, and the mandate of the court of appeals issued on October 18, 1978.

A disciplinary hearing was scheduled for November 15, 1978. On November 14, respondent requested a stay pending appeal of the district court denial of his motion for a new trial. The Hearing Board of the Attorney Registration and Disciplinary Commission denied the request and rescheduled the hearing for December 14, 1978, at the Metropolitan Correction Center, where the respondent was incarcerated.

On April 19, 1979, the Hearing board unanimously recommended that the respondent be disbarred from the practice of law. The respondent filed exceptions with the Review Board and renewed his request to stay consideration pending the court of appeal's decision concerning his motion for a new trial. The request was granted and the case was continued. In August of 1980 the Review Board was notified that the respondent's motion for a new trial was denied. Oral arguments before the Review Board were scheduled for October 24, 1980. The respondent asked for and received a continuance until February 1981. In February the respondent filed a motion to remand the proceedings to the Hearing Board for a hearing on reinstatement. The motion was denied, oral arguments heard, and on June 30, 1981, the Review

Board unanimously affirmed the recommendation of the hearing panel that the respondent be disbarred from the practice of law.

The facts particular to each disciplinary case are determinative in resolving what sanctions are to be ordered by this court. *In re Taylor* (1977), 66 Ill. 2d 567, 573; *In re Nesselson* (1966), 35 Ill. 2d 454, 461.

The court of appeals opinion in *United States v. Craig* (7th Cir. 1977), 573 F.2d 455, describes at length the details of the respondent's conduct that led to his conviction.

The Northern Illinois Ready-Mix and Materials Association (hereinafter NIRMMA) is a trade association in the metropolitan Chicago area that represents the interests of the ready-mix-cement industry. In October of 1971 respondent was retained by NIRMMA to draft and steer the passage of a bill aimed at increasing the amount of ready-mix cement which industry trucks could haul legitimately on State roads.

At the time the respondent was employed as the administrative assistant to the Illinois Secretary of State. Shortly after being retained the respondent met with ready-mix industry representatives and indicated that his fee for drafting the legislation would be $5,000. The respondent also indicated that an unspecified amount of money would be required at a later time.

A good deal of money was required later to pay off some legislators to help get the legislation passed. On one occasion in late September of 1972 the respondent met with NIRMMA representatives in Westchester, Illinois, and accepted delivery of $30,000 in cash. The respondent acted as a conduit between some industry representatives and certain members of the Illinois legislature in orchestrating a major scheme of a mail fraud. Pappas saw to it that the right people were paid for their support.

When the respondent became aware of the Federal grand jury investigation he told one of the subpoenaed legislators, "Deny everything and if we all stick together, they won't have any case \*\*\*." Thirteen participants were convicted. Of the 13, the respondent was given the heaviest sentence—five years in prison and a fine of $10,000. The respondent's conviction is conclusive on the question of guilt. *In re Sherre* (1977), 68 Ill. 2d 56; *In re Hutul* (1973), 54 Ill. 2d 209, 214.

Our concern in taking disciplinary action is to maintain the integrity of the profession. (*In re Smith* (1976), 63 Ill. 2d 250, 256.) While we are clearly not bound by the recommendations of the hearing panel, its findings are entitled to considerable weight as the trier of fact. (*In re Hopper* (1981), 85 Ill. 2d 318; *In re Wigoda* (1979), 77 Ill. 2d 154, 158.) The hearing panel unanimously recommended disbarment. The Review Board concurred. In affirming the recommendation of the Hearing Board the Review Board found that "[n]othing in the record tends to mitigate the reprehensible conduct which resulted in this conviction and these proceedings." We agree.

The final responsibility of determining what discipline should be imposed is ours. (*In re Leonard* (1976), 64 Ill. 2d 398, 406; *In re Sherman* (1975), 60 Ill. 2d 590, 593.) In *In re Rosenthal* (1978), 73 Ill. 2d 46, the court disbarred two attorneys who participated in an extortion scheme that culminated in a payoff being made to the secretary of the Chicago city council's Committee on Building and Zoning. The extortion scheme in *Rosenthal* was initiated by the secretary and transmitted to a client that sought rezoning through the attorneys. Here the respondent initiated the scheme to bribe State legislators, brought the participants together, negotiated the amount of the bribe, and arranged the payoffs.

We seek to be fair in sanctioning attorneys before

this court. In order to do so the court tries to be consistent in imposing sanctions for similar types of conduct. (*In re Clayter* (1980), 78 Ill. 2d 276, 283; *In re Saladino* (1978), 71 Ill. 2d 263, 275.) The misconduct of the respondent is more egregious than the respondents in *Rosenthal.* The facts of this case demand disbarment.

The respondent suggests that disbarment is inappropriate because such action by the court would mean the respondent would be required to wait a minimum of five years before filing a petition for reinstatement. (73 Ill. 2d R. 767.) This he asserts deprives him of any credit for the period from March 31, 1977, during which he has been suspended from practice. The respondent does not begin to persuade us; it is primarily his filings in Federal court and with the Hearing Board and Review Board that have caused the delay in this court's reaching a final resolution.

Accordingly, the respondent is disbarred.

*Respondent disbarred.*

JUSTICE MORAN took no part in the consideration or decision of this case.