(No. 64463.

*In re* JIRO YAMAGUCHI, Attorney, Respondent.

*Opinion filed November 16, 1987.*

418

Thomas P. Sukowicz, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Sidney Z. Karasik, of Chicago, for respondent.

JUSTICE CUNNINGHAM delivered the opinion of the court:

This action involves a complaint which the Administrator of the Attorney Registration and Disciplinary Commission (Administrator) filed against respondent, Jiro Yamaguchi, alleging that he had (a) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 1—102(a)(4) of the Code of Professional Responsibility (Code) (107 Ill. 2d R. 1—102(a)(4)); (b) engaged in conduct that is prejudicial to the administration of justice in violation of Rule 1—102(a)(5) of the Code (107 Ill. 2d R. 1—102(a)(5)); (c) aided a nonlawyer in the unauthorized practice of law in violation of Rule 3—101(a) of the Code (107 Ill. 2d R. 3—101(a)); and (d) failed to reveal to a tribunal information in his possession clearly establishing that a person other than his client had perpetrated a fraud upon that tribunal in violation of Rule 7—102(b)(2) of the Code (107 Ill. 2d R. 7—102(b)(2)). The Administrator requested that respondent be disbarred.

The hearing panel found that respondent was careless and indifferent to the prevention of the unauthorized practice of law but that respondent neither harmed nor intended to harm anyone. The hearing panel recom-

mended a reprimand. The Review Board thought a reprimand insufficient and recommended a six-month suspension. Both parties filed exceptions to the Review Board's recommendations.

The record contains much contradictory testimony. The contradictions are largely between respondent's testimony before the hearing panel and his testimony given previously at the trial of Albert Ebert (United States v. Ebert (N.D. Ill. 1981), No. 80—CR—518), a real estate broker whom respondent is accused of aiding in the unauthorized practice of law. The hearing panel considered both the testimony which respondent and Ebert gave at the disciplinary hearing and the testimony which respondent previously had given in the Ebert trial. We herein summarize the evidence which the hearing panel considered.

Respondent was licensed to practice law over 40 years ago (in 1946) and has since then primarily conducted a general practice, which includes substantial real estate work. For over 25 years he has been a friend of Albert Ebert.

Beginning sometime prior to 1975, Ebert began filing real estate valuation complaints (valuation complaints) before the board of appeals of Cook County (tax board). Pursuant to rule 9 of the tax board, such valuation complaints must be signed by an attorney (or by the property owner himself). In fact, the valuation complaints contain a portion prominently entitled "Attorney's Appearance and Affidavit of Compliance with Rule 9," in which the attorney affirms that he has read the valuation complaint and that he has personal knowledge that the contents thereof are accurate. The testimony indicated that, at least prior to 1975, the tax board did not strictly enforce this rule, and that in fact Ebert signed his own name to many such complaints before then.

In 1975, a tax board employee told Ebert that an attorney's name must be used on any valuation complaint filed with the tax board, unless the property owner represents himself in such matter. Ebert then consulted respondent regarding using respondent's name on valuation complaints filed with the tax board. Respondent acknowledged at the hearing that during that conversation he signed numerous valuation complaints completed by Ebert's staff and numerous blank valuation complaints, which he gave to Ebert. Respondent told the hearing panel that he was not merely permitting Ebert to use his name, but that he took full responsibility for the valuation complaints which he signed and that he tried to attend the hearings on all of those valuation complaints. However, in the Ebert trial respondent acknowledged that he does not know what became of the initial valuation complaints and that he was not asked to attend the hearings on any valuation complaints handled by Ebert's office until 1978. (Prior to that time Ebert appeared at the hearings on many of the valuation complaints himself.)

Respondent acknowledged at the hearing that from 1975 through 1979 vast numbers of valuation complaints which contain his name were signed by Ebert or his secretary and that Ebert used stationery containing respondent's name and Ebert's address. Respondent told the hearing panel that he discovered this practice in 1977 and ordered it stopped. However, the fact that the practice continued until 1979, during which time respondent appeared before the tax board handling what may have been the same complaints which contained his forged signature, casts doubt on respondent's assertion in this respect. Further, during the Ebert trial respondent testified that he would not have objected to Ebert's signing of respondent's name to the complaints.

Evidence was also conflicting as to whether respondent was compensated for either his services or the use of his name. In Ebert, respondent testified that he refused to pay a bill which Ebert sent him for unrelated services, since respondent viewed Ebert's use of respondent's name as fair compensation for Ebert's services. Respondent also stated in the Ebert trial that he had received cash from Ebert for the use of his name. Respondent told the hearing panel that this statement was in error.

The parties disagree as to what facts can be discerned from the above testimony. This disagreement arises in part from a dispute regarding the use of respondent's Ebert testimony. The Administrator sought to use respondent's Ebert testimony as admissions. The Administrator's basis for this position was that he served upon respondent, pursuant to Supreme Court Rule 216 (107 Ill. 2d R. 216), a request for admission of facts and genuineness of documents. In the request he asked respondent to admit, *inter alia*, that the transcript of the Ebert testimony was a correct record of the testimony given in Ebert and that respondent's testimony therein was made under oath and was true.

Respondent failed to reply to the request within the 28 days specified by Rule 216, and the Administrator argued that therefore the truth of respondent's testimony contained in Ebert was admitted. Respondent argued that he had not intended to stipulate to the truth of his prior testimony, but only to the accuracy of the transcript as a compilation of the testimony. Respondent further argued that even if his failure to respond to the request was an admission of the truth of the prior testimony, the prior testimony could still be contradicted, and the hearing panel could then consider both the live testimony and respondent's Ebert testimony in determining the relevant facts.

The hearing panel allowed respondent to contradict his prior testimony. This ruling does not comport with Rule 216 and in a standard civil proceeding would be erroneous. Under Rule 216, a party who admits a fact cannot in the same proceeding deny the same. (See *City of Champaign v. Roseman* (1958), 15 Ill. 2d 363 (involving Supreme Court Rule 18, the predecessor to Supreme Court Rule 216).) However, the rules of evidence applicable in an ordinary civil proceeding need not be strictly applied to a disciplinary proceeding. (*In re Silvern* (1982), 92 Ill. 2d 188.) Since a disciplinary action's primary purpose is to protect the public from unqualified or unethical practitioners (*In re Nesselson* (1966), 35 Ill. 2d 454), technicalities will not be invoked either to shield an attorney from discipline (*In re Czachorski* (1969), 41 Ill. 2d 549) or to prevent him from establishing a legitimate defense (*In re Ashbach* (1958), 13 Ill. 2d 411). Therefore, we find that the hearing panel did not err in weighing all of respondent's testimony (including his Ebert testimony) to help determine the true facts.

This court bears the responsibility for determining the sanction appropriate to the facts of this case. In determining those facts, however, the findings of the hearing panel, the body best positioned to evaluate the credibility of the witnesses, are entitled to great weight. *In re Hopper* (1981), 85 Ill. 2d 318.

Accordingly, we accept the hearing panel's limited factual findings, which are clearly supported by the evidence. These findings include that (1) respondent signed some complaints in blank and gave them to Ebert, (2) Ebert's secretary signed respondent's name on some of the valuation complaints, (3) there was insufficient evidence that respondent received consideration for the use of his name, (4) respondent failed to use diligence in discovering and preventing the use of his name in proceedings before the tax board in which he did not participate,

(5) respondent was careless and indifferent to the prevention of the unauthorized practice of law, and (6) there was no evidence of any harm to anyone or any intent to harm anyone.

Although we accept the hearing panel's factual findings, we consider those findings in conjunction with other clearly established facts as to which the hearing panel did not make express findings. This case involves an attorney with many years' experience who signed *en masse* a vast number of form valuation complaints, some of which were blank. With respect to the completed valuation complaints which he signed, respondent made no effort to ascertain whether the contents of those complaints were accurate and made no inquiry as to the propriety of the theory of relief. (Reevaluations could be based on any of numerous theories, such as an income-producing basis or a market value basis.) Further, although respondent stated that he did not know whether all of the valuation complaints which he signed were actually filed, it is inconceivable that Ebert, who was during much of this same period permitting his secretary to sign respondent's name on numerous valuation complaints, did not also use the numerous signed valuation complaints which respondent made readily available to him. Moreover, respondent had no way of knowing whether he actually appeared at the hearing on any of those complaints, and it is evident that Ebert himself appeared at the hearings between 1975 and 1978.

We find that, in view of the hearing panel's factual findings and the other clearly established facts, the Administrator has established each of the alleged violations of the Code. Specifically, respondent violated Rule 1—102(a)(4) of the Code (107 Ill. 2d R. 1—102(a)(4)), which prohibits dishonest, deceitful or fraudulent conduct. By signing valuation complaints without first reviewing them or supervising their completion, respondent de-

ceived both the tribunal and property owners into thinking that the complaints had been evaluated by a licensed attorney. Fraud includes anything calculated to deceive, including the suppression of truth and the suggestion of what is false (*In re Alschuler* (1944), 388 Ill. 492), and respondent's conduct is thus clearly fraudulent.

This same conduct was also prejudicial to the administration of justice, and respondent thus violated Rule 1—102(a)(5) of the Code (107 Ill. 2d R. 1—102(a)(5)). The tribunals of this State rely upon the honesty, candor and diligence of the attorneys of record in the matters before them, attributes to which attorneys are by oath committed.

Respondent also clearly violated Rule 3—101(a) of the Code (107 Ill. 2d R. 3—101(a)), which prohibits a lawyer from aiding a nonlawyer in the unauthorized practice of law. There can be no doubt that Ebert's conduct (which respondent condoned and furthered) was, in fact, the unauthorized practice of law. Although we have previously permitted, in *Chicago Bar Association v. Quinlan & Tyson, Inc.* (1966), 34 Ill. 2d 116, a real estate broker to fill in factual data on certain form contracts, the completion of a valuation complaint is quite unlike the completion of a form contract. The insertions which Ebert was making on the form valuation complaints did not involve mere factual data. Rather, Ebert, without the supervision of an attorney, was setting forth on the valuation complaints the results of his legal analysis of the facts which he deemed justified a tax reevaluation. Further, after Ebert or his secretary filed those valuation complaints, Ebert was appearing for oral argument before the tax board. Both the unsupervised completion of the complaint and the appearance before the administrative tribunal constituted the unauthorized practice of law.

Respondent's conduct is analogous to the conduct proscribed in *People ex rel. Chicago Bar Association v.*

*Goodman* (1937), 366 Ill. 346, wherein a nonlawyer was held in contempt for representing others in workers' compensation claims before the Industrial Commission. (See also *Chicago Bar Association v. United Taxpayers of America* (1941), 312 Ill. App. 243 (holding that the preparation and presentation of Retail Occupation Tax refund claims before the Department of Finance was the practice of law).) As we stated in *Goodman* (366 Ill. 346, 357), it is not the tribunal involved (*e.g.*, a court or administrative agency) but the character of the work which is determinative of whether the practice of law is involved.

In evaluating Ebert's practice of completing valuation complaints and appearing before the tax board, we find no justification in the assertion that the conduct was widely adopted by realty brokers and acquiesced in by the tax board. As we stated in *Chicago Bar Association v. Quinlan & Tyson, Inc.* (1966), 34 Ill. 2d 116, 120, if by their nature acts require a lawyer's training for their proper performance, it does not matter that there may have been widespread disregard of the requirement or that considerations of business expediency would be better served by a different rule.

Finally, respondent has himself stated that when he learned of Ebert's misconduct he took no action other than to ask Ebert to halt the misconduct. Consequently, respondent has violated Rule 7—102(b)(2) of the Code (107 Ill. 2d R. 7—102(b)(2)) by failing to reveal to a tribunal information in his possession clearly establishing that a person other than his client has perpetrated a fraud upon that tribunal.

The canons of ethics contained in the Code constitute a safe guide for professional conduct, and an attorney may be disciplined for not observing them. (*In re Taylor* (1977), 66 Ill. 2d 567.) In determining the appropriate discipline, we bear in mind that, although fairness re-

quires a reasonable degree of consistency and predictability, each disciplinary matter is unique and must be decided on its own facts. *In re Hopper* (1981), 85 Ill. 2d 318.

In the instant case the evidence that respondent actually authorized a nonlawyer to sign his name is inconclusive, and the hearing panel found insufficient evidence of that allegation. Because discipline can be invoked only for offenses which are clearly established (*In re Bossov* (1975), 60 Ill. 2d 439), we do not base our sanction upon this allegation. However, it is indisputable that respondent signed a vast number of valuation complaints (some of which were blank and others of which he did not even inspect) and gave them to a nonlawyer under circumstances whereby respondent knowingly aided the unauthorized practice of law and deceived a tribunal and the public. This proven conduct warrants substantial discipline to protect the public and preserve the integrity of the profession.

Fairness dictates, however, that in imposing discipline we consider mitigating circumstances. (*In re Neff* (1980), 83 Ill. 2d 20.) In this respect we note that, although respondent presented no character witnesses on his behalf, he did represent that throughout his many years of practice no other disciplinary action for dishonesty has been initiated against him. We also note that the Administrator failed to establish that respondent personally profited or attempted to profit from his misconduct. We further note the hearing panel's finding that respondent neither harmed nor intended to harm anyone. By mentioning these considerations we most assuredly do not mean to condone respondent's conduct, but we do believe that such circumstances must be considered in evaluating the gravity of the offense.

Disbarment is the utter destruction of an attorney's professional life, his character and his livelihood, and

therefore a court should use disbarment in moderation. (*In re Power* (1950), 407 Ill. 525.) Considering both the nature of the conduct and the limited mitigating circumstances, we find that disbarment is unwarranted. Rather, we believe that the appropriate sanction is the six-month suspension which the Review Board recommended.

Although we determine the appropriate sanction herein based upon this case's unique facts, we note that the sanction which we are imposing is not inconsistent with sanctions which this court and courts in other States have imposed in cases involving the intentional aiding in the unauthorized practice of law. For example, in *In re Schelly* (1983), 94 Ill. 2d 234, this court suspended an attorney for three months for facilitating the unlicensed practice of law. In *Kentucky Bar Association v. Tiller* (Ky. 1982), 641 S.W.2d 421, the Kentucky Supreme Court suspended an attorney for six months where the attorney had lent his name to nonlawyers, and had prepared form complaints and letters which were utilized by the nonlawyers upon their own determination of whether legal action should be taken. An attorney was also suspended in *Smallberg v. State Bar of California* (1931), 213 Cal. 113, 297 P. 916. In *Smallberg*, the California Supreme Court suspended an attorney for one year where the attorney prepared and signed complaints although a nonattorney, with the knowledge and approval of the attorney, performed every essential step in the transaction, including the procurement of the business, the ascertainment of the facts which were to form the basis of the complaints, and the meeting with the complainants.

Respondent's misconduct fully justifies his suspension for six months, and a six-month suspension is hereby ordered.

*Respondent suspended.*