(No. 86982.— )

*In re* GEORGE C. HOWARD, JR., Attorney, Respondent.

*Opinion filed December 2, 1999.*

424

MILLER and HARRISON, JJ., joined by HEIPLE, J., dissenting.

Steven R. Splitt, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

George B. Collins and Theresa M. Gronkiewicz, of Collins & Bargione, of Chicago, for respondent.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

This case arises from an action filed by the Administrator of the Attorney Registration and Disciplinary Commission (Commission) against respondent, George C. Howard, Jr., pursuant to Supreme Court Rule 753(b) (166 Ill. 2d R. 753(b)). The five-count complaint charged respondent with making a misrepresentation concerning a past suspension in a petition to practice *pro hac vice* in another jurisdiction; neglecting a criminal appeal; engaging in the practice of law while under a prior suspension by this court; and failing to promptly refund unearned fees. With regard to some of these alleged acts, the complaint also charged respondent with conduct involving dishonesty, fraud, deceit or misrepresentation. A panel of the Hearing Board found the charges proven, with the exception of the allegations of dishonesty, and recommended that respondent be suspended from the practice of law for two years. The Review Board adopted the factual findings of the Hearing Board, but reduced the recommended suspension to a period of three months.

On leave of this court, the Administrator has filed exceptions (166 Ill. 2d R. 753(e)), contending that in reducing the recommended sanction, the Review Board erroneously downplayed the gravity of respondent's current misconduct and prior disciplinary record.

## BACKGROUND

Respondent was admitted to the Illinois bar in 1962, and has practiced predominantly in the specialty of criminal defense. His disciplinary problems in this state began on December 12, 1984, when the United States Court of Appeals for the Seventh Circuit found that he had neglected three criminal appeals and ordered his name stricken from its roll of practicing attorneys. Respondent was reinstated by the Seventh Circuit about five years later and permitted to resume practice effective January 1, 1990. In the meantime, in 1988, the Review Board issued a reprimand against respondent based upon his Seventh Circuit suspension and, in addition, his neglect of another criminal case. Then, on September 29, 1995, this court disciplined respondent for failing to communicate with clients; failing to refund unearned fees; converting funds; and neglecting two more criminal appeals. The behavior giving rise to the September 1995 discipline occurred between 1990 and late 1993. This court sanctioned respondent by suspending him from the practice of law for 24 months, but staying all of this period except the first five months, placing respondent on a period of probation subject to certain conditions. As a result, respondent was suspended from the practice of law from September 29, 1995, until February 28, 1996. In re George Howard, MR No. 11563 (September 29, 1995).

On June 11, 1997, the Administrator brought the complaint presently at issue. Count I charged respondent with knowingly failing to report his Seventh Circuit suspension in a petition to practice *pro hac vice* before

the United States District Court for the District of Alaska. In proceedings before the Alaska court, Reshat Shabani had been convicted of conspiracy to distribute cocaine. He subsequently retained respondent to represent him in matters arising from the conviction. On June 5, 1991, respondent filed a verified petition to appear *pro hac vice* on Shabani's behalf in the Alaska court. In the petition, respondent averred that he had "not been suspended for misconduct or any other causes," failing to disclose his Seventh Circuit suspension of December 1984. Thus, count I charged respondent with making a false statement of fact to a tribunal, in violation of Rule 3.3(a)(1) of the Rules of Professional Conduct[1]; offering false evidence, in violation of Rule 3.3(a)(4); making a false statement in connection with an application for admission to the bar, in violation of Rule 8.1(a); engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(a)(4); and engaging in conduct prejudicial to the administration of justice in violation of Rule 8.4(a)(5), or conduct tending to defeat the administration of justice or bring the courts or legal profession into disrepute, in violation of Supreme Court Rule 771 (134 Ill. 2d R. 771).

In count II, the Administrator alleged that respondent had neglected Shabani's case by failing to file an appellate brief and failing to return a $25,000 unearned fee Shabani had advanced to him for that case. Thus, count II charged respondent with failing to act with reasonable diligence in representing a client, in violation of Rule 1.3; failing to make reasonable efforts to expedite litigation consistent with the client's interest, in violation of Rule 3.2; failing to promptly refund unearned fees on withdrawal from the case, in violation of Rule 1.16(e); and

---

[1]Unless otherwise indicated, all further references to "Rules" refer to the Rules of Professional Conduct (134 Ill. 2d R.1.1 *et seq.*).

conduct prejudicial to the administration of justice in violation of Rule 8.4(a)(5) and Supreme Court Rule 771 (134 Ill. 2d R. 771).

In counts III through V, the Administrator alleged that during the period of respondent's suspension from September 29, 1995, to February 28, 1996, he engaged in the unauthorized practice of law by accepting fees from and providing legal advice to three criminal defendants, Clarence Williams, Ralph Williams, and Raymond Olivarez. The complaint further alleged that throughout his consultations with each of these defendants, respondent failed to disclose that he was under suspension. Counts III through V accordingly charged respondent with practicing law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction in violation of Rule 5.5(a); and engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(a)(4), and conduct prejudicial to the administration of justice in violation of Rule 8.4(a)(5) and Supreme Court Rule 771 (134 Ill. 2d R. 771).

## HEARING BOARD PROCEEDINGS

### Counts I & II: The Shabani Case

With regard to the *pro hac vice* petition, the Hearing Board found clear and convincing evidence that respondent had made a false statement in failing to disclose his suspension and that he had engaged in conduct prejudicial to the administration of justice. However, the Board found insufficient evidence that the misstatement was either knowing or intentional or that respondent engaged in conduct involving dishonesty, fraud or deceit.

Respondent admitted that at the time he executed the *pro hac vice* petition, he was cognizant of his recent suspension and that the Alaska court required its disclosure. However, the petition was prepared by his local counsel and presented to him along with other docu-

ments for signature. Respondent testified that, in the haste of reviewing and signing documents, he had neglected to read the petition, but that if someone had called the misstatement to his attention, he would have acknowledged the suspension. The Board considered it mitigating that the misstatement involved a prior suspension rather than a present one, as, at the time respondent filed the petition, he had been reinstated in the Seventh Circuit for 18 months. The Board also accepted respondent's testimony that, in any event, the suspension would not have hindered his admission to appear before the Alaska court: the suspension barred his practice only within the Seventh Circuit, and, at the time he signed the *pro hac vice* petition, he was a member in good standing of the Ninth Circuit Court of Appeals, which encompassed the district court of Alaska. Further, according to respondent, he had been admitted to practice in the Ninth Circuit subsequent to his suspension from the Seventh Circuit, and also had appeared *pro hac vice* before the district court of Alaska on other matters several times between the years of 1971 and 1991.

As to count II, the Board found clear and convincing evidence that respondent had neglected Shabani's appeal and failed to promptly return unearned fees upon his withdrawal from Shabani's case. When Shabani retained respondent in May of 1991, Shabani's brother, Nick, advanced respondent a $25,000 retainer on Shabani's behalf. Respondent initially pursued post-trial relief in Shabani's case, and when that proved unsuccessful, filed an appeal before the Ninth Circuit. However, he then failed to file an opening brief by the September 16, 1991, due date. On February 11, 1992, the Ninth Circuit issued an order to show cause why respondent should not be sanctioned for his failure to file the brief and mandating that the brief be filed within 11 days in order to avoid dismissal of the appeal. Replying to the order, respondent

explained that he had been "constantly on trial" since filing the appeal and had delegated responsibility for all of his appeals to "other personnel" in his office. Respondent stated that he had not learned until February 10, 1992, that the brief was never filed. Attorney Elreta Dickinson testified that respondent had given her responsibility for his appeals during this time period, but could not recall specifically being delegated the Shabani case. Dickinson testified that respondent was upset when he learned the brief had not been done and that he temporarily ceased assigning her appeals as a result of this occurrence. At the end of February or early March 1992, respondent withdrew from Shabani's appeal, and Alan M. Caplan was substituted as Shabani's counsel. Caplan completed Shabani's appeal, securing a reversal of his conviction by the Ninth Circuit (*United States v. Shabani*, 993 F.2d 1419 (9th Cir. 1993)), although the conviction was later reinstated by the United States Supreme Court (*United States v. Shabani*, 513 U.S. 10, 130 L. Ed. 2d 225, 115 S. Ct. 382 (1994)).

In February 1992, when he was substituted as counsel in Shabani's case, Caplan wrote a letter to respondent requesting a return of the $25,000 retainer. When the refund was not forthcoming, Caplan sent three more demand letters to respondent on March 19, 1992, April 15, 1992, and June 2, 1992, on behalf of Nick and Reshat Shabani, again to no avail. Over one year later on October 1, 1993, respondent entered into a written agreement with Nick under which respondent promised to repay $20,000 of the funds. The agreement stated that Nick had advanced $25,000 to respondent to represent his brother "in certain post-trial proceedings." The agreement noted that with regard to the post-trial matters, respondent had made two trips to Alaska, but had then failed to prepare an appellate brief. Accordingly, respondent promised to return $20,000 of the original

amount, with $5,000 due at execution of the agreement, and the $15,000 balance by December 1, 1993. The Hearing Board observed that as of the November 20, 1997, hearing before it, $5,000 was still unpaid.

### Counts III through V: Practicing Law While Under Suspension

The Hearing Board concluded that respondent had engaged in the unauthorized practice of law under Rule 5.5(a), and committed acts prejudicial to the administration of justice under Rule 8.4(a)(5) and Supreme Court Rule 771, by giving legal advice for consideration to Clarence Williams, Ralph Williams, and Raymond Olivarez, while under suspension by this court. However, the Board disbelieved testimony on behalf of the three defendants that respondent had never informed them that he was under suspension. Accordingly, the Board found insufficient proof to support the charge that respondent had engaged in conduct involving dishonesty, fraud or misrepresentation with regard to the three defendants.

The Board consolidated its findings on counts III, IV and V, noting that there was similar proof as to each charge. The Board first concluded that, by respondent's own admission, he had consulted with each of the three defendants while under suspension and engaged in "discussions which required legal knowledge and skill." Respondent had also accepted legal fees from these individuals and deposited them into his personal account. However, the Board also recognized respondent's position that he had consulted with these individuals out of a sense of responsibility to his firm and a need to ensure that matters were handled correctly during his suspension. Thus, the Board concluded that, "[w]hether intentionally or not," respondent engaged in the practice of law during his suspension.

At the hearing, Clarence Williams testified that he contacted respondent in late November 1995. Respon-

dent met briefly with him at the Cook County jail, took notes about his case, and told him that he would be filing a motion to suppress in his case, based upon an unlawful police search. Respondent also took a retainer fee on Clarence's behalf and promised to appear at a December 19, 1995, court date. Although respondent eventually refunded the fee, he neither filed the motion nor appeared at the December hearing. Clarence retained a public defender and pled guilty to the charge against him, receiving a six-year sentence.

Ralph Williams was taken into custody in December 1995 on charges of robbery and armed robbery. His mother, Dorothy, contacted respondent on Ralph's behalf, and respondent agreed to "take care of" the matter, accepting a retainer fee from Dorothy. Ralph testified that respondent met with him in jail in January or early February 1996 and discussed the charges against him. Following his suspension, respondent represented Ralph to the conclusion of his case.

On November 3, 1995, Raymond Olivarez pled guilty to conspiracy to distribute narcotics, and received a sentence of 70 months in prison. Olivarez's daughter, Rachel Fernandez, testified that she called respondent's office in January 1996 and spoke to respondent, who scheduled a meeting with her in his office the following Saturday. At the meeting, Fernandez presented respondent with pertinent court documents. According to Fernandez, respondent consulted some "big law books," and advised her that her father had been sentenced in too high a range and that his sentence could be reduced. He requested a retainer, which Fernandez paid the following Monday. On February 2, 1996, respondent told Fernandez he was planning to "file a motion."

Before the Board, respondent admitted providing legal advice to the three defendants, but argued, "[A]t no time *** did I appear in any court, did I file any motion

in any court, \*\*\* take any deposition \*\*\*." Respondent also provided evidence that he and his office staff had informed each of the three defendants that he was suspended and that he could not give legal advice or appear in court during this period; nonetheless, the defendants demanded his services. The Hearing Board accepted respondent's position on this point, and reasoned that, because of the relative brevity of his suspension, his reputation, and the fact that he had others in his office handling most of his cases, the three defendants likely elected to hire him despite the suspension.

### Recommendation

The Administrator asserted that in light of respondent's behavior and prior discipline, disbarment was warranted. Respondent offered no alternative sanction. In mitigation, the Hearing Board recognized respondent's life of service to others, as evidenced by the accolades, awards and letters of appreciation he received. Respondent volunteered in his community, his church, and various social organizations, and had provided *pro bono* representation to his church for 20 years, as well as to many individuals. He had also lectured free of charge at local law schools. The Board also emphasized that, in contrast to other cases before it in which disbarment was recommended, the conduct at issue involved no dishonest motive or moral turpitude. In aggravation, the Board noted the "seriously aggravating impact" of respondent's prior discipline by the Seventh Circuit, the Review Board, and this court, the fact that he had never repaid $5,000 of the unearned retainer advanced by Shabani, and the seriousness of his unauthorized practice of law. The Board recommended a two-year suspension.

### DETERMINATION OF THE REVIEW BOARD

In reducing respondent's recommended sanction, the Review Board noted that, *inter alia*, by the time this case

was being briefed before it, respondent had made full restitution of Shabani's fee advance. The Review Board further observed that respondent's behavior, both in this case and his prior disciplinary cases, involved no dishonesty; that his failure to promptly return Shabani's funds was attributable to respondent's cash flow problems; and that the Hearing Board had failed to find that respondent's practice of law, though unauthorized, was intentional. Thus, in light of the significant evidence in mitigation, the Review Board recommended that respondent be subjected to three months' suspension.

## ANALYSIS

The sole issue in this case concerns the appropriate sanction to impose upon respondent. The Administrator argues that, in reducing the recommended sanction from two years' to three months' suspension, the Review Board erroneously downplayed several incidences of serious misconduct proven to have occurred in this case. She further asserts that in light of significant history of prior discipline, disbarment is the more appropriate sanction. At the very least, the Administrator urges, we should adopt the suspension recommended by the Hearing Board.

Although, in arriving at a sanction, this court affords deference to the recommendations of the Hearing and Review Boards, such recommendations are merely advisory, and the ultimate responsibility for imposing discipline rests with this court. *In re Chandler*, 161 Ill. 2d 459, 472-73 (1994). We approach our analysis with the recognition that, in any disciplinary proceeding, our goal is not to punish the attorney but rather to protect the public from incompetent or unscrupulous attorneys, to maintain the integrity of the profession, and to protect the administration of justice from reproach. *In re Bell*, 147 Ill. 2d 15 (1992).

## The Shabani Case

The Administrator first argues that, in reducing respondent's recommended sanction, the Review Board incorrectly downplayed the fact that respondent made an affirmative misstatement in his *pro hac vice* petition. According to the Administrator, the Review Board focused upon the finding that the misstatement was the result of a mistake, and ignored the Hearing Board's admonishment that respondent nonetheless had a duty to find and correct the error. Further, in failing to apprise the Alaska court of his suspension, respondent essentially deprived that court of information highly relevant to its decision to deny or possibly restrict his admission.

We find no evidence that the Review Board unduly downplayed this aspect of respondent's misconduct. Giving appropriate deference to the Hearing Board's credibility findings (see, *e.g.*, *In re Holz*, 125 Ill. 2d 546, 557 (1988) (Hearing Board findings entitled to deference by Review Board as well as this court)), the Review Board noted respondent's testimony that, had he noticed the inaccuracy in the petition, he would have corrected it to reflect the suspension. The Review Board also considered evidence that disclosure of the prior suspension probably would not have adversely affected respondent's Alaska petition: it was confined only to the Seventh Circuit's jurisdiction, and at the time of the petition, respondent was already a member in good standing of the Ninth Circuit Court of Appeals, which encompassed the Alaska district court. Further, he had practiced before the Alaska federal court on other occasions since the suspension without repercussions.

Next, the Administrator maintains that the Review Board improperly considered as a mitigating circumstance the fact that respondent eventually completed making restitution of Shabani's $25,000 fee advance. The Administrator argues that the Review Board completely disregarded respondent's initial refusal to return

the funds despite Shabani's repeated demands, and the fact that the full refund did not occur until this case was being briefed before the Review Board in late 1997 or early 1998.

Rule 1.16(e) states that a lawyer who withdraws or is discharged from a case must *promptly* refund any portion of a fee advance that has not been earned. 134 Ill. 2d R. 1.16(e). The failure to promptly return client funds will be subject to discipline. See *In re Smith*, 168 Ill. 2d 269 (1995); *In re Fox*, 122 Ill. 2d 402, 410 (1988); *In re Dorsey*, 731 S.W.2d 252 (Mo. 1987); ABA Lawyer's Manual on Professional Conduct 45:1202 (1997) (citing cases). Although there is scant guidance as to what time period is deemed "prompt" under the rules, it is readily apparent that a delay measured in years will fail the promptness test. ABA/BNA Lawyer's Manual on Professional Conduct 45:1103-04 (1997), citing, among other authorities, *In re Jennings*, 75 A.D.2d 676, 426 N.Y.S.2d 862 (1980) (discharged attorney delayed 22 months in refunding unearned fees). Delays of a shorter period also may be subject to disciplinary sanctions, especially when the lawyer has displayed indifference to repeated demands by the client for return of the funds. *Doyle v. State Bar*, 32 Cal. 3d 12, 648 P.2d 942, 184 Cal. Rptr. 720 (1982) (attorney delayed 10 months in returning client funds despite repeated requests); *People v. Coyne*, 913 P.2d 12 (Colo. 1996) (nine-month delay after promising to return funds).

We agree that the Review Board failed to properly consider respondent's clear violation of Rule 1.16(e). Respondent withdrew from Shabani's case in late February of 1992. Thereafter, he failed to respond to four letters from Shabani's new counsel demanding return of the $25,000 advance. It was not until October of 1993, over 18 months after he withdrew from the case, that respondent entered into a written agreement with Shabani

admitting that he owed $20,000, and promising to pay $5,000 at execution of the agreement and the remaining $15,000 by December 1, 1993. Even then, however, respondent disregarded his promise, and did not refund $5,000 until late 1997 or early 1998, when this case was being briefed before the Review Board.

In its discussion of mitigating factors, the Review Board pointed out that respondent had completed full restitution to the Shabanis, and that his failure to more promptly deliver the funds was "caused by cash flow problems related to the number of repayments owed" rather than any corrupt motive. Making full restitution has been considered a proper mitigating circumstance. *In re Rotman*, 136 Ill. 2d 401, 422 (1990); but see *In re Feldman*, 89 Ill. 2d 7, 13 (1982) (restitution never excuses improper conduct). However, this is not so where the client's repeated demands for repayment have gone unheeded for 18 months, and funds are forthcoming only after the client is forced to resort to proceedings before the attorney disciplinary system. *Rotman*, 136 Ill. 2d at 422-23; *Fox*, 122 Ill. 2d at 410. Although *Rotman* was a case involving the conversion of client funds, we find its logic equally applicable to the withholding of unearned fees. Further, we fail to view respondent's "cash flow problems" as a justification for his failure to even reply to Shabani's requests for his money, or, after finally executing an agreement, to reasonably honor his promise to pay.

### Practice of Law

The Administrator next argues that the Review Board understated the seriousness of respondent's conduct in practicing law during his suspension. In particular, the Administrator claims, the Review Board erroneously considered as "substantially mitigating" the fact that the Hearing Board stopped short of finding that respondent had "intentionally" practiced law.

Determining what conduct constitutes "practicing law" defies mechanistic formulation. *In re Discipio*, 163 Ill. 2d 515, 523 (1994); *People ex rel. Chicago Bar Ass'n v. Barasch*, 406 Ill. 253, 256 (1950). However, as we have consistently held, the practice of law encompasses not only court appearances, but also services rendered out of court (*People ex rel. Chicago Bar Ass'n v. Barasch*, 21 Ill. 2d 407, 414 (1961)), and includes the giving of any advice or rendering of any service requiring the use of legal knowledge (*In re Bodkin*, 21 Ill. 2d 458, 461 (1961); *People ex rel. Illinois State Bar Ass'n v. Peoples Stock Yards State Bank*, 344 Ill. 462, 475-76 (1931); see also *Discipio*, 163 Ill. 2d at 523 (focus of inquiry whether activity in question required legal knowledge and skill so as to apply legal principles and precedent)).

It is clear that respondent engaged in the type of conduct unequivocally precluded under our cases. He met with three clients, accepted fee advances from them and deposited these advances into his personal account. Then, after obtaining pertinent information from them, he exercised professional judgment with regard to their cases and advised them accordingly. Respondent considered Clarence Williams' case and told him that a motion to suppress was necessary and would be filed. He met with Ralph Williams in jail and, after taking notes of the meeting, advised him concerning future action in his case. Finally, he consulted with Rachel Fernandez, and, after examining what she believed were legal references, apprised her that he would seek a reduction in her father's prison sentence. These functions required the employment of legal discretion, knowledge and skill.

With this in mind, there can be no doubt that respondent "intentionally" practiced law. It is suggested by both the Review Board and respondent, however, that respondent is due a "lesser sanction," owing to the following language by the Hearing Board:

"The evidence was clear and convincing that in connection with each of the three criminal defendants, Respondent provided legal advice and accepted a fee for legal services. *Whether intentionally or not*, Respondent engaged in the practice of law during his suspension and thereby violated Rules 5.5(a) and 8.4(a)(5) of the \*\*\* Rules \*\*\* and Supreme Court Rule 771." (Emphasis added.)

We do not believe that this language was intended as a "finding" of diminished culpability with regard to respondent's actions in this case. To the extent it was, it is against the manifest weight of the evidence. If the testimony of the three clients was not enough, respondent admitted in his own testimony that he gave legal advice to these individuals knowing that it was disallowed under the Rules. There can be no clearer proof of intent. As this court has previously stated, "[a] common maxim holds that ignorance of the law is no excuse, and this is particularly true in a case where the person who claims lack of knowledge of a relevant directive is a practicing attorney." *In re Cheronis*, 114 Ill. 2d 527, 535 (1986).

Respondent further urges that while his conduct may have gone "over the line," he was merely attempting to keep his practice afloat during his relatively brief suspension. He argues that the three defendants at issue compelled his immediate attention, and that he was not subject to the strictures of our Rule 764 (134 Ill. 2d R. 764).[2]

We recognize that, under certain circumstances, it remains unclear what tasks may be undertaken by attorneys who are suspended yet not subject to Rule 764.

---

[2]Rule 764(b) requires a disciplined attorney to cease to maintain a presence in his law office and "cause the removal of any indicia of the disciplined attorney as lawyer, counsellor at law, legal assistant, legal clerk, or similar title." 134 Ill. 2d R. 764(b). By its express language, however, the rule applies to attorneys suspended for more than six months' duration.

Indeed, the imposition of a brief suspension does not mandate that the attorney give up on his or her future livelihood. However, in this case, there should never have been a question that respondent's conduct exceeded permissible boundaries. Our precedent has universally condemned the unauthorized giving of legal advice for consideration; this maxim has never been subject to exception or qualification. It is the character of the respondent's activity that determines whether the practice of law has occurred, and it does not matter whether considerations of business expediency would be better served by a different rule. *Discipio*, 163 Ill. 2d at 524-25; *In re Yamaguchi*, 118 Ill. 2d 417, 427 (1987). Thus, we find respondent's argument unavailing.

We now turn to the question of a proper sanction. The Administrator argues that respondent's conduct in this case, coupled with his significant history of prior misconduct, demands a sanction far in excess of the three months advocated by the Review Board. We agree.

In order to ensure predictability and fairness, this court strives to impose sanctions consistent with those imposed in other cases involving comparable misconduct (*In re Timpone*, 157 Ill. 2d 178, 197 (1993); *In re Weinberg*, 119 Ill. 2d 309, 314 (1988)); nonetheless, we also recognize that each case is unique and must be resolved in light of its own facts and circumstances (*Timpone*, 157 Ill. 2d at 197).

As recognized by the Review Board, research fails to uncover a case directly analogous to this one. However, it is well established that culpable neglect of a client's affairs is grounds for discipline (see, *e.g.*, *In re Samuels*, 126 Ill. 2d 509, 531 (1989); *Fox*, 122 Ill. 2d 402), and, in situations of repeated neglect, a lengthy suspension, even without a finding of moral turpitude (*Smith*, 168 Ill. 2d 269 (17 months' suspension with 12 months stayed); *Samuels*, 126 Ill. 2d 509 (one-year suspension for chronic

neglect, misrepresentations and prejudice to clients); *In re Johnson*, 93 Ill. 2d 441 (1982) (one year); *In re Levinson*, 71 Ill. 2d 486 (1978) (six months); *In re Taylor*, 66 Ill. 2d 567 (1977) (one year)). Further, neglect of criminal cases warrants a more severe sanction because in such matters a client's very liberty is at stake. *Bell*, 147 Ill. 2d at 39; *Fox*, 122 Ill. 2d at 409-10.

In the Shabani case, respondent filed an appeal and then essentially abandoned the matter by failing to file a brief, nearly costing Shabani his right to appeal. We are unmoved by respondent's assertions that the appeal was subsequently completed by a new attorney; this is not a mitigating factor. See *Smith*, 168 Ill. 2d at 284-85. Further, we note that respondent's prior discipline by the Seventh Circuit, the Review Board, and this court involved a similar brand of behavior: as indicated previously, this court disciplined respondent for failing to communicate with clients; failing to refund unearned fees; converting funds; and neglecting two criminal matters. Since 1984, respondent has been found to have neglected at least seven matters entrusted to him, which amounts to a serious pattern of neglect. This conduct, combined with respondent's practice of law in the face of suspension, displays an utter lack of regard for the disciplinary system and the rule of this court, as well as a tenuous concern for the welfare of each of his clients.

Nonetheless, we find disbarment unwarranted under the circumstances of this case. See *Yamaguchi*, 118 Ill. 2d at 428-29 (disbarment destroys professional life, character and livelihood and must be imposed sparingly). We have repeatedly stated that where corrupt motives and moral turpitude are not clearly shown, the proper punishment is suspension rather than disbarment. *In re Chapman*, 69 Ill. 2d 494 (1978); *In re Veach*, 1 Ill. 2d 264, 273-74 (1953); see also *In re Hogan*, 112 Ill. 2d 20, 25 (1986). *Further*, we find it significant that the neglectful

acts underlying respondent's prior discipline by this court all transpired between the period of 1990 and 1993, the same time as the mishandling of Shabani's 1991 appeal. Despite a busy criminal practice, respondent has provided years of dedicated service to the community, to his church, and to a segment of the population that is often overlooked. He cooperated with the disciplinary process and expressed remorse. *In re Uhler*, 126 Ill. 2d 532, 541 (1989).

However, as respondent's prior suspension amounted to only five months, we reject the three months' suspension suggested by the Review Board here. His present sanction should be sufficiently meaningful to "impress upon [him] the shortcomings in the manner he has conducted his practice, and to allow him to take additional steps to insure that such events will not occur again." *In re Levin*, 101 Ill. 2d 535, 542 (1984). For the reasons stated, respondent is suspended from the practice of law for a period of two years.

*Respondent suspended.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that a two-year suspension is the appropriate sanction in this case. In my view, the respondent should be disbarred.

Regarding the misconduct involved in this proceeding, the record reveals that the respondent, during a prior suspension imposed by this court, met with clients, accepted money from them, and offered them legal advice. Separately, the respondent made a false statement on a petition seeking admission *pro hac vice* in a criminal matter before a federal court in Alaska, later neglected the defendant's appeal in that case, and refused to return the defendant's fee.

The respondent's history of misconduct includes the suspension previously imposed by this court, which arose from the respondent's neglect of two clients' claims, his

failure to promptly refund client fees, and his conversion of client funds. In addition, the United States Court of Appeals for the Seventh Circuit suspended the respondent from practicing before that court for his neglect of criminal appeals. The respondent also received a reprimand from the Review Board based on the federal court suspension and his neglect of another criminal case.

The respondent's record of misconduct in this case and in prior matters warrants a more severe sanction than the two-year suspension imposed by the majority. Because of the respondent's history of sanctions and misconduct, I believe that disbarment is appropriate here.

JUSTICE HEIPLE joins in this dissent.

JUSTICE HARRISON, also dissenting:

Mr. Howard's prior conduct has shown what a suspension will mean to him. Nothing. The last time we told him to stop practicing law he did it anyway. He was unable to comply with our mandate for even five months. In direct contravention of our orders, he met with clients in his office and in jail, took money from them and dispensed legal advice.

We had hoped that a suspension would teach Mr. Howard that he should promptly return unearned fees. It did not. We had hoped that a suspension would impress upon him the importance of not neglecting criminal matters. It did not. Mr. Howard has persisted in the very sorts of behavior that resulted in his discipline before. How, then, can we have any expectation that he will comport himself properly now?

Although I am mindful of the positive aspects of Mr. Howard's contributions to the profession, it is apparent to me that another suspension will do no good. Mr. Howard is what he is, and he has made very clear through his actions that he is not receptive to our efforts to help him

reform. For the foregoing reasons, I would accept the Administrator's recommendation and vote to have Mr. Howard disbarred.

JUSTICE HEIPLE joins in this dissent.