NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 9, 2015
Decided June 24, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 13-2900 | Appeal from the<br>United States District Court |
| EDWARD GRAHAM,<br>*Petitioner-Appellant,* | for the Northern District of Illinois,<br>Eastern Division. |
| *v.* | No. 12 C 8870 |
| RANDY PFISTER, Warden,<br>*Respondent-Appellee.* | Elaine E. Bucklo,<br>*Judge.* |

**O R D E R**

Edward Graham, an Illinois prisoner, contends in this appeal from the denial of his petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, that he was denied his right to be represented at his trial by counsel of his own choosing. Because no decision of the Supreme Court establishes that the circumstances of Graham's case amount to the denial of counsel of choice, we affirm.

The facts of Graham's crime and prosecution are set forth in detail in state-court opinions affirming his conviction on direct review, *see People v. Graham*, 795 N.E.2d 231 (Ill. 2003), and denying his application for state postconviction relief, *see People v. Graham*, 972 N.E.2d 701 (Ill. App. Ct. 2012). We recap as necessary. In the mid-1980s Graham delivered drugs and money for Johnny Jones, Sr., a major cocaine distributor in

the Chicagoland area. Although Jones was paying Graham $10,000 per month for his services, Graham began to steal some of the payments he couriered. Jones discovered Graham's duplicity and retaliated by tasking Graham with more dangerous deliveries. In late-September 1996, Graham was slated to deliver to Jones $750,000, a sum that Graham did not have. Instead, Graham went to Jones's residence and shot and killed Jones and two other residents, Marshall Mason and Erica Chotoosingh.

Graham retained attorney George Howard to represent him in his capital-murder trial. In the years before Graham's trial, Howard had been disciplined both by the Illinois Attorney Registration and Disciplinary Commission ("ARDC") and this court. In that time Howard had been stricken from this court's roll of practicing attorneys for neglecting three criminal appeals; reprimanded by the ARDC for neglecting a criminal case in Illinois court; and suspended from the practice of law in Illinois for five months for failing to communicate with clients, failing to refund unearned fees, stealing from clients, and neglecting two more criminal appeals. *See In re Howard*, 721 N.E.2d 1126, 1128 (Ill. 1999). At the time of Graham's trial, Howard was under investigation for lying on his application to practice pro hac vice before the District Court for the District of Alaska, neglecting the defendant he represented in Alaska (by failing to file an appellate brief and then failing to return the money that he was paid to do so), and practicing law in Illinois while his license was suspended. *See id.* at 1128–29. He has not been authorized to practice law in the state of Illinois since 1999.

But at the time Graham retained Howard, the second investigation was still confidential, so Graham was in the dark about the details. By the time of trial, however, the ARDC's complaint was public. So on the first day of trial, the prosecutor informed the court that Howard was under investigation for "professional misconduct including allegations that he engaged in the unauthorized practice of law during the period of a suspension" and made clear the State's desire that Graham be fully aware of Howard's disciplinary troubles before the trial began.

In response the court asked Howard whether he "ha[d] any problems at all going forward with Mr. Howard on that account at this time?" Graham apparently had second thoughts about his choice of lawyer. He conceded that he had spoken briefly with Howard about the ARDC investigation and that Howard previously had assuaged his doubts. But upon reflection, in view of the fact that "this is my life that is on the line," Graham said, "I have somewhat a doubt about it … ." Asked to clarify, Graham explained that his doubt concerned Howard's "professional capability."

The trial court's response to Graham's doubt is at the heart of the dispute in this appeal. The court said, in full:

> Let me say this. Certainly I have every confidence in all of the lawyers that are involved in this case. The utmost standards and highly qualified skilled attorneys in this case. Mr. Howard's reputation I maybe even say is legendary, I mean about the country. I don't have any reservations, but it's not an issue about whether I have any reservation, the issue is whether or not you have any reservations. Let's go off the record for one minute.
>
> . . .
>
> All right. We had a discussion off the record where I indicated to Mr. Graham, part of it on the record, I believe, about my confidence in the lawyers who are involved in this trial. But I said to him my feelings aren't important, what is important are his feelings and he said some things that I think that we should place of record because I specifically did ask him off the record whether he had a problem with Mr. Howard's, the A.R.D.C. matter but more concerned about Mr. Howard's ability to represent him and your answer now after having discussed this further off the record, Mr. Graham is what, how do you feel about Mr. Howard and his ability to represent you?

Graham answered, "I feel he's very capable of representing me." Graham then proceeded to trial with Howard as his lawyer. He was convicted on all three counts and sentenced to death. (His capital sentence was later commuted to life in prison.)

After exhausting his direct appeals, Graham, for the first time, became fully informed of the facts of Howard's ARDC investigation. With the assistance of counsel, he then argued in a state postconviction petition that the misinformation regarding the extent of the ARDC investigation provided him on the first day of trial effectively denied him counsel of his choosing. The trial and appellate courts rejected that argument, and the Supreme Court of Illinois denied leave to appeal.

The Illinois Appellate Court, the last state court to address the merits of Graham's claim, concluded that it was factually unsupported. In the appellate court's view, the trial court's repeated admonitions that whether to retain Howard was

ultimately Graham's decision, and that his own feelings on the issue were all that mattered, sufficiently guarded against the possibility that Graham may have been coerced by the trial court's endorsement of Howard's skill. Therefore, the court determined, Graham had not been denied his counsel of his own choosing. Moreover, as the appellate court understood Graham, his argument implied a duty on the part of trial judges to ensure that a defendant is aware of all of his or her lawyer's disciplinary problems. The court rejected that premise, concluding that it was inconsistent with the general rule that disciplinary proceedings be confidential and that it was, in any case, too heavy a burden to place on trial judges.

Graham then turned to federal court and filed a pro se petition under 28 U.S.C. § 2254, seeking relief on a number of claims, including his theory regarding the denial of his counsel of choice. On that claim the district court concluded that the state appellate court's opinion reflected a reasonable determination of the facts and a reasonable application of the controlling law to those facts. The district court declined to certify any issue for appeal, but Graham renewed his certification request before this court, and a motions judge certified the counsel-of-choice claim for appeal. No. 13-2900 (7th Cir. Apr. 24, 2014).[1]

On appeal Graham argues that the trial court's actions on the first day of his trial infringed on his ability to choose his counsel. When, as here, a § 2254 petitioner presses a claim that was adjudicated by a state court, we cannot reach the merits of the claim unless the petitioner demonstrates that the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or involved an unreasonable determination of the facts. 28 U.S.C. § 2254(d); *Brady v. Pfister*, 711 F.3d 818, 827 (7th Cir. 2013). Graham thinks he can surmount this hurdle: He argues that the Illinois Appellate Court's adjudication was unreasonable because the court took a too-restrictive view of the right to be represented by counsel of one's own choosing. We cannot agree.

As the Supreme Court has recently reminded us, for the purposes of § 2254, federal law can be clearly established only by the holdings of that Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam). And as a corollary, when the "precise contours" of a federal right remain unclear, state courts have broad discretion in adjudicating claims asserting the right. *See White v. Woodall*, 134 S. Ct. 1697, 1705 (2014).

---

[1] After we certified this appeal, we appointed counsel to brief and argue this case on Graham's behalf. We thank Gail Ellis for her able service.

        That is a rule of particular application to this case: The Sixth Amendment's guarantee of the assistance of counsel has long been understood to protect the right of a defendant with sufficient means to choose his counsel. *See Bute v. Illinois*, 333 U.S. 640, 660, 663 (1948). But the right is qualified in many respects, *see Wheat v. United States*, 486 U.S. 153, 159 (1988), and the Supreme Court has rarely had occasion to comment on the scope of the right. Graham argues that the trial court's "unsolicited endorsement" infringed on his right to select his counsel, but Graham does not direct us to any holding of the Supreme Court establishing that a court infringes on a defendant's ability to retain counsel of his choosing when, in the face of hesitation on the part of the defendant, it endorses a lawyer's skill. His claim must, therefore, fail.

        Nevertheless, Graham argues that a line of precedent finding violations of the Sixth Amendment when a trial court arbitrarily denied a pretrial continuance, effectively denying the defendant any opportunity to obtain new counsel, is instructive here. *See, e.g., United States v. Sellers*, 645 F.3d 830, 835–36 (7th Cir. 2011); *Carlson v. Jess*, 526 F.3d 1018, 1025–27 (7th Cir. 2008). If a trial court can impermissibly influence a defendant's selection of his lawyer through its scheduling practices, then surely, Graham says, a court's endorsement of a lawyer after a defendant's expression of doubt about that lawyer can exert that same impermissible influence.

        Once again, *Woodall* and *Donald* provide the answer for purposes of federal habeas review. A state court's adjudication of a claim cannot be unreasonable if it refuses to extend Supreme Court precedent to cover a new factual scenario. *See Woodall*, 134 S. Ct. at 1706. Nor can a state court's decision contravene clearly established federal law if the case does not present a question considered by earlier Supreme Court decisions. *See Donald*, 135 S. Ct. at 1377. Whatever merit Graham's argument has as an original matter, it cannot support the grant of collateral relief under § 2254.

                                                                                                        AFFIRMED.