2020 IL App (1st) 171821

No. 1-17-1821

Order filed March 6, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 96 CR 32393 |
| | ) | |
| EDWARD GRAHAM, | ) | Honorable |
| Defendant-Appellant. | ) | Maura Slattery Boyle, |
| | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the denial of defendant's motion for leave to file a successive postconviction petition because he failed to demonstrate the requisite "prejudice" element of the cause and prejudice test under the Post-Conviction Hearing Act.

¶ 2     Defendant Edward Graham appeals from the circuit court's denial of his motion for leave to file a successive postconviction petition pursuant to the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1 *et seq.* (West 2016). On appeal, defendant contends that the court erred in denying his motion because he offered newly discovered documentary evidence that his trial counsel

operated under a *per se* conflict of interest. Specifically, he claims that a police report shows that his trial counsel represented two of the State's witnesses. For the following reasons, we affirm.[1]

¶ 3    Following a 1998 jury trial, defendant was convicted of the first degree murders of Johnny Jones, Sr., Erica Chotoosingh, and Marshall Mason, who were shot to death in September 1996. Mr. Jones, Sr.'s adult son, Johnny Jones, Jr., was one of the State's eyewitnesses. Defendant was sentenced to death. On direct appeal, our supreme court affirmed defendant's convictions. *People v. Graham*, 206 Ill. 2d 465 (2003). Because our supreme court set out the facts in detail on direct appeal, we summarize the evidence presented as necessary to resolve the issue raised on appeal.

¶ 4    At trial, defendant was represented by private counsel, George Howard. On the first day of trial prior to jury selection, Mr. Howard disclosed to the trial court that, shortly after the murders, he had been contacted by an individual who was Mr. Jones, Sr.'s brother and Mr. Jones, Jr.'s uncle. That person asked Mr. Howard to "see about" his nephew, Mr. Jones, Jr., who at that time was being questioned by police. Mr. Howard told the court: "So I drove to the police station pursuant to that request to see what was going on. I did not speak to [Mr. Jones, Jr.]. I was told by the investigating officer that he was not a suspect and I said then I don't have any business here and I left." Mr. Howard told the court that he had never talked to Mr. Jones, Jr. and that he was not paid by Mr. Jones, Jr.'s family. Mr. Howard further told the court that he had disclosed these facts to defendant "immediately upon being retained." Mr. Howard explained: "I knew myself there was no conflict because I was not involved but I did want to let [defendant] know at least I had been in contact with the case to that extent." The trial judge then questioned defendant about

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

Mr. Howard's disclosure and asked whether he still wanted Mr. Howard to represent him. Defendant agreed that Mr. Howard's statements to the court accurately reflected his understanding of the situation. Defendant told the court that he had no objection with Mr. Howard continuing to represent him. The court asked defendant if he was "satisfied there is no conflict here?" Defendant answered: "Not between, you know, with me, with him representing me, as far as [Mr. Jones, Jr.]."

¶ 5       At trial, the evidence showed the following. Defendant met Mr. Jones, Sr., a major Chicago cocaine distributor, in the mid-1980s. For a number of years, defendant worked for Mr. Jones, Sr. by delivering cocaine to dealers, collecting drug-sale proceeds, and returning the money to Mr. Jones, Sr. Mr. Jones, Sr. lived in a house with Mr. Mason and Ms. Chatoosingh. Occasionally, Mr. Jones, Jr. and his friend Cory Williams stayed overnight at the house in second-floor bedrooms. Mr. Jones, Jr. and Mr. Williams were sleeping at the house on the night of the murders. Mr. Jones, Jr. awoke to a loud thump and heard the sound of gunfire. Mr. Jones, Jr. and Mr. Williams crept downstairs, where Mr. Jones, Jr. saw defendant shooting a handgun into Mr. Mason's bedroom. Mr. Jones, Jr. and Mr. Williams went back upstairs and attempted to call police on a cellular phone. According to Mr. Williams, Mr. Jones, Jr. said, "That's Ed." As they discovered that the cell phone was not working, they heard a woman scream and more gunfire. When Mr. Jones, Jr. returned downstairs, he saw defendant in Mr. Jones, Sr.'s bedroom with a handgun. Defendant fired several shots into Mr. Jones, Sr.'s bedroom and then crouched down and fired several more shots. Defendant fired another shot in Mr. Mason's room, then grabbed a white box and fled from the house. According to Mr. Williams, Mr. Jones, Jr. repeated "[T]hat was Ed." Mr. Jones, Jr. and Mr. Williams called police after discovering that the victims were dead. After

leaving the house, defendant flew to Las Vegas, Nevada. He was arrested in Las Vegas more than one month later.

¶ 6    While defendant was incarcerated in Las Vegas, he had a number of conversations with Carl Torrence, who was being held on drug charges. Mr. Torrence testified that when he asked defendant why he had been arrested, defendant answered that he was involved in a murder in Chicago. Defendant initially told Mr. Torrence that he had visited Mr. Jones, Sr.'s house early one morning to drop off money. Inside the house, he smelled gun smoke and saw that Mr. Jones, Sr. was dead. Defendant left but returned to the home a short time later. He then noticed Mr. Jones, Jr. standing on the stairs and left immediately. In a later conversation, after Mr. Torrence urged defendant to "come clean," defendant admitted to Mr. Torrence that he had been stealing from Mr. Jones, Sr. and that he shot the three victims. Mr. Torrence contacted the authorities, offering to exchange his information on defendant for "a deal."

¶ 7    Mr. Jones, Jr., Mr. Williams, and Mr. Torrence testified for the State. Defendant testified on his own behalf and told a story consistent with the story he initially told Mr. Torrence.

¶ 8    The jury found defendant guilty on three first degree murder counts. Defendant was sentenced to death but his sentence was later commuted to natural life in prison.

¶ 9    On direct appeal to our supreme court, defendant argued, *inter alia*, that he received ineffective assistance of counsel because his trial attorney, Mr. Howard, "labored under a *per se* conflict of interest." *People v. Graham*, 206 Ill. 2d 465, 470 (2003). He argued that "[Mr.] Howard previously represented [Mr. Jones, Jr.] a key prosecution witness and the son of one of the murder victims, when Mr. Howard went to the police station on the night of the murder at the request of [Mr. Jones, Jr.'s] uncle after [Mr. Jones, Jr.] had been taken there for questioning." *Id.* at 470.

After reviewing Mr. Howard's statements to the trial court on this topic, our supreme court determined that there was no *per se* conflict of interest because "[Mr.] Howard simply had no relationship – attorney-client or otherwise – with [Mr. Jones, Jr.]" *Id.* at 474. Our supreme court noted there was no evidence that Mr. Jones, Jr. "agreed to let [Mr.] Howard represent him" or that [Mr.] Howard agreed to represent him. *Id.* Rather, "[a]t best, [Mr.] Howard conditionally assented to be [Mr. Jones, Jr.'s] attorney if [Mr. Jones, Jr.] was a suspect" but Mr. Howard left the police station when he learned that Mr. Jones, Jr. was not a suspect. *Id.* Our supreme court proceeded to affirm defendant's convictions.

¶ 10    On November 5, 1999, (while his direct appeal to our supreme court was pending), defendant filed a *pro se* petition for postconviction relief under the Act. In the petition, defendant included a number of claims of ineffective assistance of counsel. The petition was summarily dismissed on December 23, 1999. However, in January 2001, the trial court entered an order pursuant to an "agreement of the parties" stating that the "dismissal order entered 12/23/98 is vacated *nunc pro tunc*" and that postconviction proceedings were "reinstated."

¶ 11    In December 2008, defendant filed an amended postconviction petition, in which he alleged that he was denied his sixth amendment right to counsel of choice when he was misinformed on the first day of trial regarding disciplinary proceedings involving Mr. Howard; that the trial court coerced him into keeping Mr. Howard as his attorney; and that Mr. Howard provided ineffective assistance by failing to consult a forensic expert. The trial court granted the State's motion to dismiss the petition on July 22, 2010. On appeal, our court affirmed the dismissal of the amended petition. *People v. Graham*, 2012 IL App (1st) 102351.

¶ 12    Defendant filed a petition for writ of *habeas corpus* in the United States District Court. Defendant's *habeas* petition included a claim that Mr. Howard labored under a *per se* conflict of interest, based upon the "call that [Mr.] Howard received from [Mr. Jones, Jr.'s] uncle immediately after the murders asking [Mr.] Howard to go to the jail where [Mr. Jones, Jr.] was being interrogated." *Graham v. Pfister*, No. 12-C-8870, 2013 WL 3944297, *5 (N.D. Ill. July 29, 2013). In denying that petition, the district court concluded that, given the "lack of evidence that any relationship was established" between Mr. Howard and Mr. Jones, Jr., defendant "cannot establish that [Mr.] Howard labored under a constitutionally impermissible conflict of interest." *Id.* That decision was affirmed by the United States Court of Appeals for the Seventh Circuit. *Graham v. Pfister*, 614 Fed. Appx. 847 (7th Cir. 2015).

¶ 13    On March 22, 2017, defendant filed a motion for leave to file a successive postconviction petition under the Act. In that motion, defendant claimed that he had obtained new evidence showing that Mr. Howard worked under a *per se* conflict of interest, in that Mr. Howard represented *both* Mr. Jones, Jr. and Mr. Williams. Defendant's motion attached, as Exhibit A, a single-page, untitled typewritten document that defendant claims to be a "police report." Defendant's name, address and date of birth appear at the top of Exhibit A. Although the document bears no heading and does not identify its author, it appears to summarize statements by defendant to detectives. An entry dated November 12, 1996 reflects that defendant told detectives that he wanted to hire Mr. Howard, who subsequently met with defendant at the police station, and "PER [Mr.] HOWARD D[efendant] WILL NOT GIVE STATEMENT." That entry then states:

"NOTE: W6 HAS INHERENT CONFLICT W6 REPRESENTED W1 AND W2 THE NIGHT OF THE SHOOTING. [Mr.] HOWARD CAME AND MET WITH W1 + W2 AT AREA 2 THE DAY OF INCIDENT PER DETECTIVES."

¶ 14    Although Exhibit A does not explicitly identify "W6," "W1," and "W2", defendant argued that they refer to Mr. Howard, Mr. Jones, Jr. and Mr. Williams. Based on Exhibit A, defendant's motion for leave to file a successive postconviction petition asserted that Mr. Howard "misrepresented the facts to the court and defendant regarding his involvement with Mr. Jones, Jr. and never informed the court or this defendant about also appearing on behalf of [Mr.] Williams as his counsel too."

¶ 15    Defendant's motion acknowledged that in his direct appeal, he previously raised a *per se* conflict of interest claim, but argued that, at that time, the "only facts that were known" were Mr. Howard's statements to the trial judge. Defendant submitted a supporting affidavit in which he states that he only learned of Exhibit A after he received his "client file" from the attorney who represented him in his *habeas* appeal before the Seventh Circuit. His motion attached a letter from that attorney dated July 14, 2015, in which the attorney confirms that her representation of defendant has concluded and states "I will shortly be sending you your Client File."

¶ 16    According to defendant's affidavit, he "did not become immediately aware of" Exhibit A after receiving that file in 2015 "due to the volume of the material." He states that he "only discovered [Exhibit A] during a lockdown" on February 12, 2017 "while looking through the legal material" sent by the attorney. Defendant's motion argued that there is "cause" to grant him leave to file a successive petition, because "the full content of this claim was hidden" from him by Mr. Howard and the prosecuting attorneys. He further contended that, since Mr. Howard labored

under a *per se* conflict of interest, he did not need to show "actual prejudice" resulting from the conflict.

¶ 17   On June 22, 2017, the trial court entered an order denying defendant's motion for leave to file a successive postconviction petition. The trial court concluded that *res judicata* barred defendant's claim that his trial counsel had a conflict of interest, as defendant "already raised this claim on direct appeal *** and in a petition for a writ of *habeas corpus*." The trial court found that Exhibit A did not preclude application of *res judicata*, reasoning:

> "Assuming, *arguendo*, that the report is actually newly discovered, at best it only serves to support the evidence previously entered into the record. [Mr.] Howard testified that he was called by [Mr. Jones, Jr.'s] uncle to represent [Mr. Jones, Jr.], agreed to conditionally represent him if he was a suspect, went to the Area 2 police station, determined that [Mr. Jones, Jr.] was not a suspect, and left. [Citation.] [Defendant] was aware of all of this at trial and stated that he did not have reservations about [Mr.] Howard's representation. [Citation.] This report does not provide any evidence that [Mr.] Howard had anything resembling an undisclosed attorney-client relationship with [Mr. Jones, Jr.]."

The trial court thus found that defendant's claim "is barred as *res judicata* and he has otherwise failed to satisfy the cause and prejudice test necessary to file his successive petition."

¶ 18   On appeal, defendant argues that the trial court erred in denying him leave to file a successive postconviction petition. Defendant first argues that his conflict of interest claim is not barred by *res judicata* because it differs from the claim he raised on direct appeal. Specifically, he now alleges that Mr. Howard represented Mr. Williams as well as Mr. Jones, Jr., and his "present

claim relies on different facts" based on "a newly-discovered police report" not available on direct appeal.

¶ 19    Apart from *res judicata*, defendant asserts that he otherwise demonstrated the requisite "cause" and "prejudice" to permit a successive postconviction petition under the Act. With respect to "cause," he argues that he could not have raised the instant claim in his 1999 initial post-conviction petition or his 2008 amended postconviction petition because he had no knowledge of Exhibit A and did not receive it until his attorney sent him his "client file" in 2015. Defendant further urges that he established "prejudice" because the police report "flatly contradicts" Mr. Howard's statements that he never spoke to Mr. Jones, Jr., and demonstrates that Mr. Howard had an undisclosed attorney-client relationship with Mr. Jones, Jr. and Mr. Williams. He argues that "a *per se* conflict may very well have existed" if Mr. Howard represented Mr. Jones, Jr. and Mr. Williams on the night of the murders. Defendant argues that where a *per se* conflict of interest exists, "prejudice is presumed and reversal is automatic" unless the defendant knowingly waived his right to conflict-free counsel. Defendant thus requests that we reverse the trial court's denial of his motion for leave to file a successive petition, and that we remand for second-stage postconviction proceedings.

¶ 20    The Act "provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial" which "is not a substitute for an appeal, but rather, is a collateral attack on a final judgment." *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act provides that "[o]nly one petition may be filed *** without leave of the court." 725 ILCS 5/122-1(f) (West 2016). Nevertheless, there are "two bases upon which the bar against successive proceedings will be relaxed." *Edwards*, 2012 IL 111711, ¶ 22. "The first basis for relaxing the bar

is when a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier." *Id.* (quoting *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). The cause and prejudice test is now codified in the Act. 725 ILCS 5/122-1(f) (West 2016). Second, a colorable claim of "actual innocence" will permit a successive postconviction petition. *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 40 (citing *Edwards*, 2012 IL 111711, ¶ 23). Thus, in order to file a successive petition, the defendant's petition must satisfy the cause-and-prejudice test or it must state a colorable claim of actual innocence. *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 19. "This standard is higher than the normal first-stage 'frivolous or patently without merit' standard applied to initial petitions. [Citations.]" *Id.*

¶ 21     In this case, defendant asserts that he has satisfied the cause and prejudice test. "It is the defendant's burden to demonstrate both cause and prejudice for each claim raised in his successive petition." *People v. Thompson*, 383 Ill. App. 3d 924, 929 (2008). The Act provides that "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

¶ 22     "[A] defendant's *pro se* motion for leave to file a successive postconviction petition will meet the section 122-1(f) cause and prejudice requirement if the motion adequately alleges facts demonstrating cause and prejudice." *People v. Smith*, 2014 IL 115946, ¶ 33. "To meet the cause-and-prejudice test *** requires the defendant to submit 'enough in the way of documentation to allow a circuit court to make that determination.' [Citation.] *Id.* ¶ 35. "[L]eave of court to file a

successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petition fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. [Citations.]" *Id.*

¶ 23    We review a trial court's ruling on a motion for leave to file a successive postconviction petition *de novo*. *People v. Bailey*, 2017 IL 121450, ¶ 13. We also note that we may affirm on any basis in the record and are not constrained by the trial court's reasoning. *Thompson*, 383 Ill. App. 3d 924, 929 (2008) ("Our review is of the trial court's judgment, not the reasons for that judgment [Citation.] Therefore, our decision is not dependent upon the trial court's reasoning.").

¶ 24    As an initial matter, the State argues that defendant's "claim that Mr. Howard operated under a conflict of interest because he had an attorney-client relationship with [Mr. Jones, Jr.] is barred by the doctrine of *res judicata*" because defendant "already raised this same claim on direct appeal" and in his petition for writ of *habeas corpus*.[2] Defendant responds that the doctrine of *res judicata* should be "relaxed" because his current claim "is based on substantial new evidence – the police report." However, we need not decide the *res judicata* issue. This is because, even assuming that *res judicata* did not bar defendant's claim, he must still show cause and prejudice. As discussed below, we conclude that he failed to do so.

¶ 25    Our review of the motion and the supporting documentation makes clear that defendant fails to allege facts demonstrating "prejudice" under the Act. In reaching this conclusion, we emphasize that the specific *per se* conflict of interest claim that defendant seeks to assert in his

---

[2] It is not entirely clear if the State's argument means to concede that *res judicata* would not apply, to the extent that defendant claims that Mr. Howard represented Mr. Williams, rather than Mr. Jones, Jr.

successive petition is dependent upon the purported "police report" in Exhibit A. For a number of reasons, Exhibit A is insufficient to support the claimed *per se* conflict of interest.

¶ 26     First, defendant fails to establish that Exhibit A is what he purports it to be. As the State points out, there is nothing on the face of Exhibit A that verifies that it is, in fact, a "police report." The document is untitled and does not indicate that it was produced by the Chicago Police Department or any other agency. The author is unnamed and the document does not specify the source of the information contained therein. Defendant provides no clue as to its origin, other than to say that it was in his "client file" sent to him by his attorney in 2015. Even if that is true, defendant offers nothing to corroborate that Exhibit A was created by police rather than by a third party, such as an attorney. In this regard, we note that it seems incongruous for a police report to suggest that Mr. Howard "has [an] inherent conflict." There is no apparent reason why the police would include such a legal conclusion in an investigative report.

¶ 27     More important, the statements in Exhibit A are insufficient to support the specific *per se* conflict of interest claim that defendant urges on appeal. Our supreme court has "found three situations where a *per se* conflict exists: (1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *People v. Fields*, 2012 112438, ¶ 18. Defendant's motion for leave to file a successive petition was premised on the second category, under the theory that Mr. Howard contemporaneously represented two State's witnesses. However, even assuming that Exhibit A accurately states that Mr. Howard "met with" those individuals, it does not establish that

Mr. Howard *represented* either of them. "The attorney-client relationship is a voluntary, contractual relationship that requires the consent of both the attorney and client [Citations.]" *People v. Simms*, 192 Ill. 2d 348 382 (2000). "It cannot be created by the attorney alone or by an attorney and a third party who has no authority to act." (Internal quotation marks omitted.) *Id.* "Being a consensual relationship, '[t]he client must manifest [his] authorization that the attorney act on his behalf, and the attorney must indicate [her] acceptance of the power to act on the client's behalf'" *Id.* (quoting *Simon v. Wilson*, 291 Ill. App. 3d 495 (1997)). Even if Mr. Howard met with Mr. Jones, Jr. and Mr. Williams, this fact alone would not demonstrate that they consented to hire Mr. Howard, or that Mr. Howard consented to represent either of them. Similarly, to the extent Exhibit A claims that Mr. Howard "represented" Mr. Jones, Jr. and Mr. Williams, that characterization by an unnamed third party cannot be construed as a manifestation of consent by either attorney or client.

¶ 28 Finally, even assuming *arguendo* that Mr. Howard represented Mr. Jones, Jr. and Mr. Williams on the night of the murders, Exhibit A does not indicate that this representation was *contemporaneous* with Mr. Howard's representation of defendant, as is necessary to support his allegation of a *per se* conflict. "Illinois supreme court case law has clearly and consistently held that, in cases where defense counsel has represented a State's witness, a *per se* conflict of interest will not be held to exist unless the professional relationship between the attorney and the witness is contemporaneous with defense counsel's representation of the defendant." *People v. Fields*, 2012 IL 112438, ¶ 20; see also *People v. Murphy*, 2013 IL App (4th) 111128, ¶ 46 ("In *Fields*, the supreme court rejected the notion that the defense counsel's prior representation of the State's witness created a *per se* conflict of interest. [Citation]"). Nothing in Exhibit A reflects

contemporaneous representation. At most, it suggests the possibility that Mr. Howard represented Mr. Jones, Jr. and Mr. Williams on the "night of the shooting" in September 1996, and that weeks later, on or about November 12, 1996, defendant hired Mr. Howard. There is nothing in Exhibit A to suggest that Mr. Howard represented Mr. Jones, Jr. or Mr. Williams beyond the night of the murders, let alone that Mr. Howard continued to represent them after he was hired by defendant.

¶ 29    As the motion and supporting documents do not allege facts sufficient to state the elements of a *per se* conflict of interest claim, we cannot find that defendant "adequately alleges facts demonstrating cause and prejudice." *Smith*, 2014 IL 115946, ¶ 34. Specifically, defendant cannot show "prejudice" under the Act, which requires defendant to demonstrate that the purported conflict "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016). Defendant's failure to establish the "prejudice" element of the cause and prejudice test independently justifies the denial of his motion for leave to file a successive postconviction petition. Thus, we need not address whether defendant otherwise demonstrated the requisite "cause" under the Act. See *Smith*, 2014 IL 115946, ¶ 38 ("Having concluded that defendant cannot show prejudice, we need not address defendant's claim of cause.").

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31    Affirmed.